**STATE of Minnesota, Respondent,**

v.

**Don JONES, Appellant.**

**No. A07–1168.**

Supreme Court of Minnesota.

Sept. 10, 2009.

Jodie L. Carlson, Assistant State Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN, and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant Scott County Attorney, Shakopee, MN, for respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

On February 16, 2007, a Scott County jury found appellant Don Antoine Jones guilty of three felonies: check forgery (greater than $2,500), Minn.Stat. § 609.631, subds. 2, 4(2) (2008); offering a forged check (greater than $2,500), Minn. Stat. § 609.631, subds. 3, 4(2) (2008); and theft by swindle (greater than $2,500), Minn.Stat. § 609.52, subds. 2(4), 3(2) (2008). The district court convicted Jones on all three charges and sentenced him on the check forgery charge to 30 months with the Commissioner of Corrections. The court of appeals affirmed his conviction, and Jones raises the following four issues on appeal: (1) whether the district court erred by denying Jones's application for a public defender; (2) whether Jones's waiver of counsel was valid; (3) whether the State committed misconduct; and (4) whether the district court erred by not appointing advisory counsel for Jones. We affirm.

Jones and his girlfriend, Shannon Duffney, co-owned Shanndyn's Towing & Recovery, and jointly opened two business accounts at TCF Bank. The accounts were opened in late 2004 and were both closed by August 2005. On January 9, 2006, Jones deposited to an account at Guaranty Bank an alleged payroll check drawn on one of the closed TCF accounts in the amount of $3,600. The check bore the signature of Vicky Duffney, Shannon's mother, and it was endorsed by Jones. Two days later, TCF returned the check to Guaranty Bank because the TCF account had been closed. Guaranty Bank demanded repayment from Jones, but Jones never repaid the money.

Guaranty Bank contacted the police on January 21, 2006, and in the course of the investigation, Detective Laura Kvasnicka learned that Vicky Duffney denied signing the check and had nothing to do with Shanndyn's Towing & Recovery. Detective Kvasnicka also taped an interview with Shannon, in which Shannon confirmed that the towing business was closed and that the signature on the check was not her mother's.

Jones was arrested and appeared without counsel for his bail hearing on February 27, 2006. The district court informed Jones that he had a right to counsel and could apply for services from the public defender. Jones posted bail, and on March 3, 2006, he told the district court, "I'm going to get a private attorney." Jones stated that he could find one by May, and the State asked for a continuance of the hearing.

On May 5, 2006, Jones appeared without counsel for his first appearance. Jones applied for a public defender, but the district court denied his application. No rationale on the record was given for the denial. The application, dated May 5, 2006, indicated that Jones had no job but had no expenses for rent or food because he lived with his sister. The application showed that Jones also lived with his 1–year–old daughter, and his girlfriend, Shannon, who was earning $2,080 a month. Jones owned a car and had monthly expenses of less than $1,500 for the car and child support. The value of the car was equal to the debt owed on the car. At the top of the application, the words "deny— over guidelines" were circled. On the record, the district court stated that this was the second time Jones had been denied a public defender, and recommended that he seek a continuance to retain counsel from the court's list of reduced-fee attorneys. Jones replied, "I can hire one myself in probably about a month. I am probably going to have to sell my truck to pay for any—that was probably the reason why I

was denied the first time, because of my truck."

Jones told the district court on June 9, 2006, that he was denied twice for a public defender and that none of the reduced-fee attorneys worked out for him. The district court gave Jones a copy of the complaint and reiterated that he could apply for a public defender or that a list of reduced-fee attorneys could be provided. Jones then waived his right to an attorney for the first appearance. On September 8, 2006, Jones appeared for his omnibus hearing. After speaking with Jones, the prosecutor informed the district court that Jones wanted to set the case for trial. Jones told the district court that he was "kind of getting a little stable" and could contact one of the reduced-fee attorneys. The district court set the jury trial for a date in January so that Jones could appear in court with a lawyer.

Jones appeared for trial, again without counsel, on January 16, 2007. Before voir dire began, Jones objected to proceeding without counsel, claiming that he had wrongly been denied a public defender three times. The district court (but not the same district court judge who had presided over earlier proceedings) noted that his previous application was denied based on his income, expenses, and his live-in girlfriend's income, and the district court stated that it would not review that decision. By this time, Jones was employed, and the district court noted that Jones's current earnings would disqualify him from a public defender. The district court also stated that Jones's failure to retain counsel during the previous continuances meant that no further continuances would be granted. Jones mentioned that he had a lawyer for an open case in Dakota County, but that he could not afford counsel for another case. He stated that the court kept offering him a public defender

application or a reduced-fee attorney list, but neither option worked for him. After a brief recess, the district court stated that Jones's Dakota County lawyer was willing to represent Jones but was waiting for his retainer to be paid by Jones before undertaking to represent Jones on another matter. The district court acknowledged that "Jones has been doing the things he has to do but just not finalizing them." The jury trial was continued to February 14, 2007, and the court warned Jones that his attorney should file a certificate of representation by January 30.

But on February 14, Jones appeared again without counsel. The district court told him, "[M]y plan is to have a Jury Trial today and assume that you have given up your right to have an attorney represent you since you have chosen not to retain anybody and have them here today." Jones argued that he had wrongly been denied a public defender because his girlfriend had a job. When Jones objected to the district court's statement that he was choosing to represent himself, the court had an extended conversation with Jones about his financial situation. As a result, the court ordered Jones to fill out another application for a public defender to make the record clear.

The application dated February 14, 2007, indicated that Jones was employed, making $12 an hour plus overtime and was getting a raise to $15 an hour. Shannon was also working, and the two were making at least $4,500 a month together. Jones listed expenses for rent, food, daycare, and child support totaling less than $3,000 a month. The court collector explained on the record that Jones was ineligible because his income alone, including overtime, was greater than 125% of the poverty guidelines. The district court, without saying more, denied Jones's application.

Jones appeared for jury trial that afternoon. The prosecutor asked the district court "to get an informed waiver of counsel on the record." The court conducted a brief waiver of counsel colloquy, in which Jones acknowledged that he had the right to an attorney, that he had been refused a public defender four or five times, and that he had been unable to retain counsel on his own. Jones agreed that he would represent himself. The jury found Jones guilty on all three charges, and the court of appeals affirmed his conviction.

## I.

 Jones contends that his May 5, 2006, and February 14, 2007 applications for a public defender were improperly denied.[1] Although the right to counsel is constitutional, U.S. Const. amend. VI; Minn. Const. art. I, § 6, the right to representation by a public defender is statutory, Minn.Stat. § 611.14 (2008). A defendant entitled to representation by a public defender under section 611.14 is eligible for public defender services only if he or she is financially unable to afford or obtain counsel. Minn.Stat. § 611.15 (2008); Minn. R.Crim. P. 5.02, subd. 1(2). The district court shall not appoint counsel for a defendant who is financially able to retain private counsel but refuses to do so. Minn. Stat. § 611.17(b) (2008); Minn. R.Crim. P. 5.02, subd. 1(2). The district court must screen any request for a public defender using the following standard:

A defendant is financially unable to obtain counsel if:

(1) the defendant, or any dependent of the defendant who resides in the same household as the defendant, receives means-tested governmental benefits; or

(2) the defendant, through any combination of liquid assets and current income, would be unable to pay the reasonable costs charged by private counsel in that judicial district for a defense of the same matter.

Minn.Stat. § 611.17(a) (2008); Minn. R.Crim. P. 5.02, subd. 3. The district court must make "appropriate inquiry into the financial circumstances of the [defendant]," including the defendant's assets and liabilities, the liquidity of real property and other assets, and any transfer of assets since the date of the alleged offense.[2] Minn.Stat. § 611.17(b); Minn. R.Crim. P. 5.02, subd. 4. In such an inquiry, the burden is on the defendant to show that "he or she is financially unable to afford counsel." Minn. R.Crim. P. 5.02, subd. 4. The defendant must also provide the information necessary to determine eligibility and has a continuing duty to disclose any relevant changes to his or her financial circumstances. Minn.Stat. § 611.17(b). If the court determines that a defendant meets the stated requirements, then it must appoint a public defender to represent the defendant. Minn.Stat. § 611.18 (2008). Both parties agree that we should apply the abuse of discretion standard of review from *In re Stuart*, 646 N.W.2d 520, 523 (Minn.2002), to the district court's determination of eligibility.

 Jones first contends that his May 5, 2006 application was wrongly denied because the district court should have considered only his income and not that of his girlfriend when deciding his eligibility.

---

**1.** The State argues that Jones failed to provide a sufficient record for appellate review. We disagree.

**2.** Merely because a defendant is employed or is able to make partial payments for adequate

representation does not necessarily mean that he or she is ineligible for a public defender. *See* Minn.Stat. § 611.20, subd. 4 (2008); Minn. R.Crim. P. 5.02, subd. 5.

The district court is required to make its decision based on "the financial circumstances of the applicant," but neither the statutes nor the rules of criminal procedure state that the inquiry must be limited to only the defendant's liquid assets and current income. The district court's duty, however, is to make a broad inquiry into the defendant's financial circumstances that "might be relevant to the applicant's eligibility for a public defender." Minn. Stat. § 611.17(b). The income of a live-in girlfriend is information that might be relevant to a defendant's eligibility, especially when the defendant does not dispute including the income. *See State v. Vincent,* 883 P.2d 278, 283 n. 6 (Utah 1994) (considering the income of both persons in "a domestic unit, without regard to whether they are legally married").

■ The burden to show financial eligibility for a public defender is on the defendant, and Jones did not argue that Shannon was unwilling to help him retain counsel or that her income was otherwise inaccessible to him. Based on the information in the May 5, 2006 application, the district court decided that Jones did not qualify for a public defender. Jones did not provide any additional information to show that he was financially unable to afford counsel. On this record, the district court did not abuse its discretion.[3]

■ Jones also contends that his February 14, 2007 application was wrongly denied because the district court limited its inquiry to the fact that Jones's income was higher than 125% of the federal poverty guidelines. Jones argues that the poverty guidelines only measure indigency and should not be used as a proxy for the comprehensive inquiry required under Minn.Stat. § 611.17.

Again, the district court must consider all available information about the defendant's financial circumstances that "might be relevant to the applicant's eligibility for a public defender." We have held that a "district court must exercise its discretion to determine whether [a defendant] has met his burden of establishing that through any combination of liquid assets and current income he would be unable to pay the reasonable costs charged by private counsel for defense of a case." *In re Stuart,* 646 N.W.2d at 527.

In this case, the record reflects that the district court considered more than just the federal poverty guidelines. The district court's discussion with Jones about his financial circumstances on February 14, 2007, spanned 13 pages of the transcript. His family situation, his and his girlfriend's income, his current cost of child support, and his ability to post bond and retain counsel in Dakota County were all discussed. The application for public defender services also included significant detail about his income sources, assets, and expenses. Jones's argument depends on a very narrow reading of the record that because the court collector only referred to the federal poverty guidelines as a reason for denying Jones's eligibility, nothing else was considered. Given the context of the entire record, including but not limited to the inquiry by the district court, we agree with the court of appeals that the court conducted a thorough investigation into Jones's particular financial situation. We conclude that the district court did not fail to exercise its discretion or rely solely on the federal poverty guide-

---

3. We find no support in this record for the court of appeals' conclusion that the district court made an "implicit credibility finding," and the credibility of statements by Jones in his application plays no role in our decision today.

lines.[4]

## II.

■ Jones next argues that he did not waive his right to counsel because he was not offered a written waiver, because any waiver colloquy given by the district court was insufficient, and because waiver by conduct is inapplicable to his situation. The record does not reflect any attempt by the district court to obtain a written waiver of counsel from Jones, but the district court did conduct a waiver of counsel colloquy on the record. The court of appeals affirmed, stating that Jones waived his right to counsel by conduct, quoting *United States v. Bauer*, 956 F.2d 693, 695 (7th Cir.1992), for the proposition that " 'the combination of ability to pay for counsel plus refusal to do so *does* waive the right to counsel at trial. It is waiver by conduct.' " *State v. Jones*, 755 N.W.2d 341, 350 (Minn.App.2008). We will only overturn a "finding of a valid waiver of a defendant's right to counsel if that finding is clearly erroneous." *State v. Worthy*, 583 N.W.2d 270, 276 (Minn.1998).

■ Though the right to counsel is a constitutional requirement, it may be relinquished in three ways: (1) waiver, (2) waiver by conduct, and (3) forfeiture. *See, e.g., State v. Pedockie*, 137 P.3d 716, 721 (Utah 2006). These three concepts are discussed at length by the Third Circuit in *United States v. Goldberg*, 67 F.3d 1092, 1099–1102 (3d Cir.1995).

■ Waiver is the voluntary relinquishment of a known right. *Id.* at 1099. We have required the waiver of the constitutional right to counsel to be knowing, intelligent, and voluntary. *State v. Osborne*,

715 N.W.2d 436, 443–44 (Minn.2006); *Worthy*, 583 N.W.2d at 276; *State v. Jones*, 266 N.W.2d 706, 712 (Minn.1978). A written waiver of the right to counsel is necessary in felony cases unless the defendant refuses to sign such a waiver. *See* Minn. Stat. § 611.19 (2008); Minn. R.Crim. P. 5.02, subd. 1(4). And we require district courts, before accepting a waiver of the right to counsel, to fully advise the defendant by intense inquiry regarding the nature of the charges, the possible punishment, mitigating circumstances, and all " 'facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel.' " *Osborne*, 715 N.W.2d at 443–44 (quoting Minn. R.Crim. P. 5.02, subd. 1(4)); *see also Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Camacho*, 561 N.W.2d 160, 173 (Minn.1997).

■ The district court's finding that Jones expressly waived his right to counsel is unsupported by the record. There was no written waiver. The prosecutor asked the district court "to get an informed waiver of counsel on the record," but the ensuing colloquy was insufficient. The district court asked Jones if he understood that he had a right to an attorney, and the district court summarized the prior proceedings. After stating that Jones had not been able to retain counsel, the district court asked Jones if he was going to proceed on his own and represent himself. Jones agreed that he would represent himself. At no time during the colloquy did the district court address the nature of the charges or the advantages and disadvantages of a decision to waive counsel. More importantly,

---

4. Jones submitted supplemental authority, and the State filed a motion in this court to strike the admission of that authority. We deferred the State's motion until consideration of the appeal on its merits. Having considered the merits, we deny the State's motion.

Jones objected twice to proceeding without counsel. We conclude that, on this record, Jones did not give a knowing, intelligent, and voluntary waiver of his right to counsel.

■■■■ Waiver by conduct is a separate concept. Under *Goldberg,* waiver by conduct occurs if a defendant engages in dilatory tactics after he has been warned that he will lose his right to counsel. 67 F.3d at 1100. Waiver by conduct applies to those defendants who "voluntarily engag[e] in misconduct knowing what they stand to lose [but] are not affirmatively requesting to proceed *pro se." Id.* at 1101. The same colloquy required for affirmative waivers must also be given before a defendant can be said to have waived his right to counsel by conduct. *Id.* at 1100 (requiring *Faretta* warnings); *see also Bauer,* 956 F.2d at 695; *Pedockie,* 137 P.3d at 723–24; *State v. Hampton,* 208 Ariz. 241, 92 P.3d 871, 874 (2004); *State v. Carruthers,* 35 S.W.3d 516, 548 (Tenn.2000). In *Bauer,* the defendant was warned of the dangers of self-representation before the court found that he waived his right to counsel by his conduct. 956 F.2d at 695. Again, in this case, the district court failed to conduct a colloquy sufficient to satisfy the requirements of Minn. R.Crim. P. 5.02, subd. 1(4).

■■■■ The final method of relinquishing the right to counsel is forfeiture.[5] Under *Goldberg,* a defendant who engages in "extremely dilatory conduct" may be said to have forfeited his right to counsel. 67 F.3d at 1101; *see generally* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.3(c) (3d ed. 2007). Forfeiture does not require the court to conduct a waiver colloquy with the defendant. *Goldberg,* 67

F.3d at 1101; *see also Hampton,* 92 P.3d at 874; *Carruthers,* 35 S.W.3d at 548. Forfeiture is usually reserved for severe misconduct, when other efforts to remedy the situation have failed. *See, e.g., Hampton,* 92 P.3d at 874–75 (listing cases discussing the forfeiture doctrine).

Other courts have applied forfeiture in situations similar to the circumstances presented here. *E.g., Wilkerson v. Klem,* 412 F.3d 449, 451–56 (3d Cir.2005). In *Wilkerson,* the Third Circuit found that a state court did not act unreasonably by applying the forfeiture doctrine to a defendant who was "duly notified of the date of his trial, who has been advised to obtain counsel in sufficient time to be ready for trial, and who appears on the scheduled date without counsel and with no reasonable excuse for his failure to have counsel present." *Id.* at 454–56; *see also Siniard v. State,* 491 So.2d 1062, 1064 (Ala.Crim.App.1986) (finding forfeiture when a defendant failed to retain counsel after eight months and two continuances). The rationale behind applying the forfeiture doctrine is that courts must be able to preserve their ability to conduct trials. *Wilkerson,* 412 F.3d at 455 (quoting *Fischetti v. Johnson,* 384 F.3d 140, 146 (3d Cir.2004)). Applying the forfeiture doctrine to the right to counsel is a matter of first impression for our court. *Cf. State v. Lehman,* 749 N.W.2d 76, 81–82 (Minn.App.2008) (noting that the issue of whether the right to counsel can be forfeited was an issue of first impression in Minnesota, and finding forfeiture when a defendant attacked his public defender in open court). But we have noted that a balance must exist between a defendant's "right to counsel of his choice against the public interest of maintaining

---

5. Our statements regarding forfeiture in *State v. Osborne,* 715 N.W.2d 436 (Minn.2006), have no bearing on this case. In *Osborne,* we dealt with forfeiture (or waiver by silence) in the context of issues that were raised for review but unobjected to at trial. *Id.* at 441–44.

an efficient and effective judicial system." *State v. Courtney*, 696 N.W.2d 73, 82 (Minn.2005).

■ Here, Jones engaged in conduct that was extremely dilatory. Almost a full year passed between Jones's first bail appearance and his trial. Jones appeared for court without counsel on eight separate occasions. On seven of those occasions, Jones was told to retain counsel. Jones applied for and was denied a public defender at least three times. He repeatedly told the district court that he was planning on retaining private counsel, and he was granted three continuances solely for the purpose of giving him time to do so. The district court also set Jones's trial date four months after his omnibus hearing so that he could hire counsel. And the district court made it clear to Jones that he would get no more continuances as a pro se party after February 14, 2007.

■ Moreover, Jones was aware of the disadvantages of representing himself. In his objections to proceeding without counsel, Jones was concerned that he would not get a fair trial because he would not understand what was being said. He stated that, without counsel, he felt like "a sitting duck, basically a target." Even with this knowledge, Jones still failed to retain counsel. The district court found that Jones was "not finalizing" what he had to do to retain counsel and that he was "somebody who [was] not taking the initiative to do what they need to do to get counsel." The district court concluded that Jones had "given up [his] right to have an attorney." On this record, we hold that the district court's decision was not clearly erroneous. Jones forfeited his right to counsel.

### III.

■ Jones also argues that the State committed misconduct by improperly eliciting hearsay evidence, by asking Shannon if she was claiming that other witnesses lied to the jury, by asking questions that elicited testimony about Jones's prior convictions and his violation of an order for protection, and by making emotional appeals to the jury and improperly denigrating Jones's handling of his own defense. Jones did not object to any of these alleged errors during trial. We review unobjected-to prosecutorial misconduct under a modified plain-error standard of review. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). Under this approach, Jones must demonstrate (1) error (2) that is plain. *Id.* If Jones demonstrates plain error, then the burden shifts to the State to show that Jones's substantial rights were not affected, meaning that the State must show there is no reasonable likelihood that the absence of the prosecutorial misconduct would have significantly affected the verdict of the jury. *Id.* If there is plain error that affects Jones's substantial rights, we must then assess "whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.*

On this record, the State has demonstrated that none of the claimed instances of prosecutorial misconduct had a significant effect on the jury verdict. The State's closing argument did not emphasize any of the complained-of incidents, and the evidence was overwhelming that Jones presented the check, knew that Vicky was not authorized to sign a check from the towing company, and never tried to pay the money back. Thus, Jones is not entitled to relief on his prosecutorial misconduct claims.

### IV.

■ Finally, Jones claims that the district court erred by not appointing advisory counsel for him. Under Minn.

R.Crim. P. 5.02, subd. 2, a district court "*may* appoint 'advisory counsel' to assist the accused who voluntarily and intelligently waives the right to counsel." (Emphasis added.) Appointing advisory or standby counsel is a "procedural matter for judicial determination," and Jones does not have "a constitutional right to advisory counsel." *State v. Clark*, 722 N.W.2d 460, 466–67 (Minn.2006). In addition, "the role of standby counsel is fundamentally different from the role of counsel generally." *State v. Richards*, 552 N.W.2d 197, 207 (Minn.1996). In the comment to Rule 5.02, subdivision 2, the purpose of advisory counsel "appointed over the objection of the defendant is to help the accused understand and negotiate through the basic procedures of the trial." The appointment is discretionary for a district court, especially if the court is concerned about the fairness of a trial involving a pro se defendant or about the potential disruptiveness of the defendant. Minn. R.Crim. P. 5.02, subd. 2 cmt. Jones did not request advisory counsel or make any showing that the structural integrity of his trial was affected. *See Clark*, 722 N.W.2d at 467. Thus, we conclude that the district court did not abuse its discretion in not appointing advisory counsel here.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. In this appeal, the record presented is insufficient for purposes of determining whether the district court abused its discretion when it decided that Jones was ineligible for a public defender.

Under Minn.Stat. § 611.17(a)(2) (2008), a defendant who is financially unable to obtain counsel is entitled to the appointment of a public defender. A defendant is financially unable to obtain counsel if he or she, "through any combination of liquid assets and current income, would be unable to pay the reasonable costs charged by private counsel in that judicial district for a defense of the same matter." *Id.* The requirements of Rule 5.02, subdivision 3(2), of the Minnesota Rules of Criminal Procedure parallel those of section 611.17(a)(2). To determine financial eligibility, the district court is required to "make appropriate inquiry into the financial circumstances" of the defendant. Minn.Stat. § 611.17(b) (2008). The defendant must "submit a financial statement under oath or affirmation setting forth the applicant's assets and liabilities." *Id.* Further, the "burden is on the [defendant] to show that he or she is financially unable to afford counsel." Minn. R.Crim. P. 5.02, subd. 4.

Section 611.17 also requires a district court to consider more than just the income of a defendant who applies for a public defender. *See also* Minn. R.Crim. P. 5.02, subd. 5 cmt. ("[T]he public defender can be appointed for the person of moderate means who would be subject to substantial financial hardship if forced to pay the full cost of adequate representation."). We have held, as recently as 2002, that a "district court must exercise its discretion to determine whether [a defendant] has met his burden of establishing that through any combination of liquid assets and current income he would be unable to pay the reasonable costs charged by private counsel for defense of a case." *In re Stuart*, 646 N.W.2d 520, 527 (Minn. 2002); *see also Hanson v. Passer*, 13 F.3d 275, 279 (8th Cir.1994) ("[t]he phrase 'financially unable to obtain counsel' does not require a showing of indigency to entitle an accused to counsel; it is a less stringent standard"). In *Stuart*, because the district court chose not to consider the liquidity of a defendant's real estate holdings, we remanded the case, concluding that the dis-

trict court failed to exercise its discretion in determining eligibility. 646 N.W.2d at 526. Although adopting wholesale the use of objective criteria like the poverty guidelines would streamline the eligibility process, it defeats the purpose of the statutory scheme that requires consideration of a defendant's assets, liabilities, and financial circumstances. Thus, under *Stuart*, a district court that adopts the use of only the poverty guidelines has not met its duty to conduct a full financial inquiry and has failed to exercise its discretion.

It appears Jones applied for, and was denied, the appointment of counsel four or five times, but only two of the applications are in the record—one dated May 5, 2006, and one dated February 14, 2007.[1] Both of these applications were denied. The denials of these two applications are at issue in this case. Because the court below failed to make any findings or explain its reasons for denying the applications on the record in any meaningful way, it is impossible to apply an abuse of discretion standard of review to the court's denials of these applications.

In his May 5, 2006, application, Jones listed no income, monthly expenses of $2,000, and a car valued at $17,000 but with a balance owed of $17,000. Jones also listed three dependent children, one of whom lived with him and his girlfriend. The application also included information about his girlfriend's monthly income of $2,080 and monthly expenses totaling between $1,384 and $1,484 for the car, insurance, and child support payments. According to the application, Jones' rent and food were paid for by Jones' sister. The application contained no information as to "the reasonable costs charged by private counsel in that judicial district for a de-

fense of the same matter." At the top of the form, the words "deny – over guidelines" were circled.

The February 14, 2007, application was similarly denied. That application listed the combined monthly income of Jones and his girlfriend as $3,784 and their monthly expenses as $3,592. At some point, the application was amended to show that Jones and his girlfriend had a combined monthly income of approximately $4,500 and monthly expenses of approximately $3,000. The application also showed that Jones owned a car valued at $2,000, and that his girlfriend was pregnant with a due date on March 7. Like the May 5, 2006, application, the February 14, 2007, application contained no information as to the reasonable costs of private counsel, nor is that information found anyplace else in the record. In the transcript of the hearing at which the February 14 application was discussed, the district court asked the court collector to explain why Jones' public defender application was denied. The court collector testified that Jones' income, $2,280, was, by itself, over 125% of the federal poverty guidelines. This was the only reason given for the denial.

The court, based on its reading of the record before us, concludes that the district court did not abuse its discretion when it denied Jones' public defender applications. The record, however, belies the court's conclusion. First, with respect to the May 5, 2006, application, the only indication as to the reason for the denial comes from the application itself, on which the words "deny – over guidelines" were written. If, as it appears from the application that the only reason for the denial was that Jones' income was above the poverty

---

1. Copies of the applications are attached as addendum 1 and 2 respectively. For reasons of privacy, certain information contained on the applications, but not relevant to our discussion, has been redacted.

guidelines, the denial was an abuse of the district court's discretion because the statutory scheme requires consideration of a defendant's financial circumstances including liquid assets, current income, assets, liabilities, and the reasonable costs associated with paying for private counsel. On the record before us, there is no indication that the district court considered any of these factors. But even if the district court considered all the information contained on the application, I would still conclude that the court abused its discretion. Assuming without deciding that it was appropriate for the district court to impute to Jones the income of his girlfriend, the difference between Jones' monthly income and expenses was approximately $500, and the record discloses no assets of substantial value. In denying the application, the district court did not explain why the $500 difference between monthly income and expenses was sufficient to "pay the reasonable costs charged by private counsel in that judicial district." Nor does this court explain why the $500 difference between monthly income and expenses is sufficient to pay the reasonable costs of representation. To the extent that the court's opinion holds that a $500 monthly difference between Jones' income and expenses is sufficient to pay the reasonable costs for private representation, the court should explain why such an amount is sufficient. But the court has not done so. Nor can it do so on this record without engaging in improper fact-finding.

Second, with respect to the February 14, 2007, application, the only reason given by the court collector for the denial was that Jones' income alone exceeded the poverty guidelines. Again, a denial for that reason alone was an abuse of the district court's discretion, as it was with the denial of the May 5, 2006, application. I conclude that the district court abused its discretion, even if it considered all the information contained on the February 14 application. Though the difference between Jones' monthly income, including that of his girlfriend's, and Jones' monthly expenses was $1,500, there is still nothing in the record to explain why $1,500 in excess of income over Jones' expenses is sufficient to "pay the reasonable costs charged by private counsel in that judicial district." Further, the record reflects that Jones had retained private counsel in a separate matter. None of these costs were included in the application, let alone in the district court's eligibility determination.[2]

For the reasons discussed above, I conclude that the district court abused its discretion when it denied Jones' May 5, 2006, and February 14, 2007, applications for a public defender. To the extent that the court is correct in its conclusion that the district court conducted an appropriate inquiry into Jones' financial circumstances, I would remand to the district court for further explanation because, on the record before us, it is impossible to determine whether the denials were an abuse of discretion.

ATTACHMENT

**2.** The application for a public defender is a one-page form, and there are only two blanks for an applicant to list liabilities. Although Jones mentioned his other legal matter to the district court, the particulars of that arrangement did not appear on the application, even after he was interviewed by the court collector.

## Addendum 1

*deny - over guidelines* **ctrm.5**

### APPLICATION FOR THE SERVICES
### OF THE PUBLIC DEFENDER

70 CR 05-24316
70 CR 06-5432.

**PERSONAL DATA (please print)**

| NAME: Last | First | Middle | FILE NUMBER: |
|---|---|---|---|
| ADDRESS: Street | | Apt. # | TIME AT THIS ADDRESS? ___ years ___ months |
| CITY | STATE | ZIP | HOME PHONE NUMBER |

| CHARGE(S) AGAINST APPLICANT | IN CUSTODY | WORK PHONE NUMBER ( ) |
|---|---|---|
| furnish alcohol / forgery - theft swindle | ☐ YES ☑ NO | SOCIAL SECURITY NUMBER |

**DEPENDENT INFORMATION**

| girlfriend Name | Age | Living With You? | Name | Age | Living With You? |
|---|---|---|---|---|---|
| Spouse/P: | | ☑ YES ☐ NO | Child: | | ☐ YES ☑ NO |
| Child: | | ☑ YES ☐ NO | Child: | | ☐ YES ☑ NO |

**EMPLOYMENT INFORMATION**

| | Current or last employer's Name, Address, Phone No. | Occupation | How long employed? |
|---|---|---|---|
| Self | N/A | | |
| Spouse/Partner: | Hunter - Temp. | 6 mos. | |
| If unemployed, give last date worked: | Bandolino's Touring | 6/04 - 11/05 |

**INCOME INFORMATION**

| Check per week or per month for each item | Self | Spouse/Partner |
|---|---|---|
| Gross pay per ☐ week ☐ month (or hourly rate of pay) | $ | $ |
| Retirement Benefits (IRA, Pension, etc) per ☐ week ☐ month | $ 0 | $ 0 |
| ☐ Weekly ☐ Monthly amount of: | $ | $ |
| Public Assistance (MFIP/GA) | $ 0 | $ 0 |
| Social Security Benefits | $ | $ |
| Unemployment/Worker's Compensation | $ | $ |
| Veteran's Benefits | $ 0 | $ 0 |
| Child Support per ☐ week ☑ month | $ | $ |
| Other Income (describe): per ☐ week ☐ month | $ | $ |
| Total Income per ☐ week ☐ month | $ | $ |
| TOTAL HOUSEHOLD INCOME PER ☐ week ☐ month | | $ |

40 hrs. x $13.00/hr.

13.00/hr
52.00

$2080.00

Girlfriend's income

**ASSETS (include assets of spouse/partner)**

| | | |
|---|---|---|
| Cash | girlfriend | $ 3.00 |
| Bank Accounts (Savings, Checking, Money Market, etc.) | | $ 0 |
| Stocks, Bonds, Notes | | $ 0 |
| Other Significant Assets (cars, recreational vehicles, jewelry, guns, etc.) | | $ 17,000 |
| Real Estate Owned (Market Value) | | $ 0 |
| Mortgaged: ☐ Yes ☐ No Amount Owed: $ | | |
| TOTAL HOUSEHOLD ASSETS | | $ 17,000 |

02 Lincoln V - $11,000.
S - $6,000.

**EXPENSES (include expenses of spouse/partner)** — no rent - Food pd. by sister

| | |
|---|---|
| Monthly Living Expenses (housing, car, food, utilities, etc.) | $ |
| Other Expenses (credit cards, medical, child support, alimony, etc.) | $ |
| TOTAL HOUSEHOLD EXPENSES | $ 2,000.00 |

(CONTINUED) car pmt. - $489.00
car ins. - $200.
rio - 800.
Arrears - unknown

Lives w/sister

**Request and Oath**

I, the undersigned, request the Court to appoint an attorney to represent me. I affirm, or swear, on penalty of perjury that I am presently unable to hire an attorney to represent me, and that my answers to the above questions are complete and truthful.

**If a Public Defender is appointed, I understand I will be required to pay a public defender co-payment of $28.00 unless it is waived by a Judge. I, also, understand that I may be required to reimburse the Public Defender Fund an additional amount, as determined by the Court.**

Signature: _____ Date: 5/5/04
Defendant

## ORDER

The First District Public Defender ☐ is ☑ is not assigned to represent the defendant.

The defendant shall pay $ _____ towards his/her defense. Payment shall be made to the Court Administrator. Payment is due by _____ .

Dated: 5/5/06 _____
Judge of District Court

---

**Revenue Recapture Notification**

Failure to pay will not result in you being deprived of the services of your court appointed lawyer, nor will payment be made a condition of your probation. Failure to pay shall result in your account being referred to the Minnesota Dept. of Revenue. The Dept. of Revenue may offset your state income tax refund under the Revenue Recapture Act, MSS Chapter 270A.

If this debt is referred to the MN Dept. of Revenue and a revenue recapture claim is filed, you have the right to contest the validity of the revenue recapture claim, unless it is based on a court order, by requesting a hearing in writing, within 45 days of the notification of the claim. You must include a detailed explanation of your reason(s) for challenging the offset. You may not raise an issue previously litigated.

The amount collected by the Dept. of Revenue may include additional collection costs.

---

Revised 03/09/2006

ATTACHMENT

## Addendum 2

⑤

### APPLICATION FOR THE SERVICES
### OF THE PUBLIC DEFENDER

**PERSONAL DATA (please print)**

| NAME: Last | First | Middle | FILE NUMBER: |
|---|---|---|---|
| ADDRESS: Street | | Apt. # | TIME AT THIS ADDRESS? years ___ months ___ |
| CITY | STATE | ZIP | HOME PHONE NUMBER |
| CHARGE(S) AGAINST APPLICANT *forged check* | | IN CUSTODY ☐ YES ☑ NO | WORK PHONE NUMBER |
| | | | SOCIAL SECURITY NUMBER |

**DEPENDENT INFORMATION**

| Name | Age | Living With You? | Name | Age | Living With You? |
|---|---|---|---|---|---|
| Spouse/Partner: | | ☑ YES ☐ NO | Child: | | ☐ YES ☑ NO |
| Child: | | ☑ YES ☐ NO | Child: | | ☐ YES ☑ NO |

**EMPLOYMENT INFORMATION**

| | Current or last employer's Name, Address, Phone No. | Occupation | How long employed? |
|---|---|---|---|
| Self | Classic Auto Spa 8600 Egan Dr | Manager | 4 month |
| Spouse/Partner: | | | 4 month |
| If unemployed, give last date worked: | | | |

**INCOME INFORMATION**

| Check per week or per month for each item | Self | Spouse/Partner |
|---|---|---|
| Gross pay per ☐ week ☐ month (or hourly rate of pay) | $ 13.00 | $ |
| Retirement Benefits (IRA, Pension, etc) per ☐ week ☐ month | $ | $ |
| ☐ Weekly ☐ Monthly amount of: | $ | $ |
| Public Assistance (MFIP/GA) | $ | $ |
| Social Security Benefits | $ | $ |
| Unemployment/Worker's Compensation | $ | $ |
| Veteran's Benefits | $ | $ |
| Child Support per ☐ week ☐ month | $ | $ |
| Other Income (describe): per ☐ week ☐ month | $ | $ |
| Total Income per ☐ week ☐ month | $ | $ 3,784 |
| **TOTAL HOUSEHOLD INCOME PER ☐ week ☐ month** | | $ |

**ASSETS (Include assets of spouse/partner)**

| Cash | $ |
|---|---|
| Bank Accounts (Savings, Checking, Money Market, etc.) | $ |
| Stocks, Bonds, Notes | $ |
| Other Significant Assets (cars, recreational vehicles, jewelry, guns, etc.) | $ |
| Real Estate Owned (Market Value) | $ |
| Mortgaged: ☐ Yes ☐ No Amount Owed: $ | |
| **TOTAL HOUSEHOLD ASSETS** | $ |

**EXPENSES (Include expenses of spouse/partner)**

| Monthly Living Expenses (housing, car, food, utilities, etc.) | $ |
|---|---|
| Other Expenses (credit cards, medical, child support, alimony, etc.) | |
| **TOTAL HOUSEHOLD EXPENSES** | $ 3,592 |

(CONTINUED)

② A07-1168

**Request and Oath**

I, the undersigned, request the Court to appoint an attorney to represent me. I affirm, or swear, on penalty of perjury that I am presently unable to hire an attorney to represent me, and that my answers to the above questions are complete and truthful.

If a Public Defender is appointed, I understand I will be required to pay a public defender co-payment of $28.00 unless it is waived by a Judge. I, also, understand that I may be required to reimburse the Public Defender Fund an additional amount, as determined by the Court.

Signature: _____ Date: 2/14/07
Defendant

## ORDER

The First District Public Defender ☐ is ☑ is not assigned to represent the defendant.

The defendant shall pay $ _____ towards his/her defense. Payment shall be made to the Court Administrator. Payment is due by _____.

Dated: ____2/14/07____ _____
Judge of District Court

---

**Revenue Recapture Notification**

Failure to pay will not result in you being deprived of the services of your court appointed lawyer, nor will payment be made a condition of your probation. Failure to pay shall result in your account being referred to the Minnesota Dept. of Revenue. The Dept. of Revenue may offset your state income tax refund under the Revenue Recapture Act, MSS Chapter 270A.

If this debt is referred to the MN Dept. of Revenue and a revenue recapture claim is filed, you have the right to contest the validity of the revenue recapture claim, unless it is based on a court order, by requesting a hearing in writing, within 45 days of the notification of the claim. You must include a detailed explanation of your reason(s) for challenging the offset. You may not raise an issue previously litigated.

The amount collected by the Dept. of Revenue may include additional collection costs.

---

Revised 03/09/2006

---

MEYER, Justice (dissenting).

I respectfully dissent from the majority's opinion on the ground that Jones neither waived nor forfeited his right to counsel. I would reverse the court of appeals and grant Jones a new trial.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants in state courts a fundamental right to be represented by counsel at trial. *Gideon v. Wainwright*, 372 U.S. 335, 342–43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The right to counsel can be waived by a defendant, but such waiver is only valid if it is voluntary, knowing, and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); *State v. Osborne*, 715 N.W.2d 436, 443–44 (Minn.2006). The defendant may communicate the waiver of the right to counsel expressly or by his conduct. *See State v. Worthy*, 583 N.W.2d 270, 275, 276–77 (Minn.1998).

In extreme circumstances, courts have found that a defendant "forfeited" his Sixth Amendment right to counsel. *United States v. Leggett*, 162 F.3d 237, 250 (3d Cir.1998); *see United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir.1995). Although the line between forfeiture and waiver is often blurred, the distinction between the two concepts is crucial. As the Third Circuit has articulated: "Unlike

waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg,* 67 F.3d at 1100. Because a conclusion of forfeiture results in the unintended loss of a fundamental right, "extremely serious misconduct" or "extremely dilatory conduct" is required to support a finding of forfeiture. *See id.* at 1101–02.

I disagree with the majority that Jones's conduct was extremely dilatory. Forfeiture is generally reserved for defendants who have verbally or physically abused their attorneys. *See, e.g., Leggett,* 162 F.3d at 240, 250 (at a hearing, defendant punched his attorney in the head, and then began to choke, spit, and scratch him); *State v. Lehman,* 749 N.W.2d 76, 81–82 (Minn.App.2008) (listing cases and holding the defendant forfeited his right to counsel where he attacked his attorney in open court). In *United States v. McLeod,* the Eleventh Circuit concluded that a defendant had forfeited his right to counsel after the defendant's second attorney moved to withdraw, testifying that the defendant had verbally abused and threatened to harm him, threatened to sue him, and had attempted to make him engage in unethical activities. 53 F.3d 322, 325–26 (11th Cir.1995).

Most cases examining forfeiture have a high standard for what misconduct qualifies as "extremely dilatory." *See Goldberg,* 67 F.3d at 1095 (holding that conduct did not qualify as "extremely dilatory" where appointed attorney withdrew days before trial, testifying that defendant had threatened him, and defendant failed to retain private counsel). Cases of physical or verbal abuse to a lawyer most clearly qualify; a defendant's right to

counsel should not be protected when he so deliberately and outrageously abuses that privilege. Similarly, where a defendant's purposeful manipulation of the judicial system blocks a court's ability to ensure a sufficient waiver, the court cannot be expected to protect that right. *See Commonwealth v. Lucarelli,* 971 A.2d 1173, 1179 (Pa.2009) ("Should an unrepresented defendant choose not to engage in the colloquy process with the trial court, were there no provision for forfeiture of counsel, that defendant could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice."). But in cases where the defendant did not purposefully abuse the privilege, and the court could assess the defendant's awareness of the risks of self-representation, forfeiture should not be applied. *See State v. Hampton,* 208 Ariz. 241, 92 P.3d 871, 874 (2004) (stating that a finding of forfeiture "should result only when less restrictive measures are inappropriate," and declining to hold that conduct warranted forfeiture, even though the defendant threatened the lawyer's life).

A very small number of courts have found misconduct "extremely dilatory" when a defendant's actions in obtaining, working with, or changing representation have led to excessive delay or inconvenience. *See, e.g., United States v. Mitchell,* 777 F.2d 248, 257–58 (5th Cir.1985) (holding it was not an abuse of discretion for a trial court to proceed where defendants "requested [a] continuance in bad faith and for the purpose of delay" and one defendant tried "to manipulate the court's schedule by retaining an attorney he knew to have a conflict"); *State v. Cummings,* 199 Wis.2d 721, 546 N.W.2d 406, 418–20 (1996) (holding defendant had forfeited his right to counsel where he consistently refused to cooperate and complained about his attorney in order to manipulate, dis-

rupt, and delay the proceedings). Misconduct was also labeled "extremely dilatory" when a court gave a defendant access to $20,000 specifically to retain new counsel, but the defendant still failed to have representation at a trial date five weeks later. *Lucarelli*, 971 A.2d at 1180.

In this case, the record does not show such purposeful manipulation as to be labeled "extremely dilatory misconduct." Jones's financial situation made it unclear whether he would qualify for a public defender, and his applications for such representation were denied with no clear explanation as to why he did not qualify. Questions on his financial status fluctuated between whether his finances were stabilizing, or whether he qualified for public representation. This confusion lasted until the day of his trial, as evidenced by the fact that he was again allowed to reapply for a public defender. He appeared and participated at all relevant proceedings, giving the trial court the opportunity to assess his state of mind about self-representation. Further, the district court made no findings that Jones's failure to get an attorney was done in bad faith or to purposefully delay the proceedings—the court acknowledged that Jones was doing what needed to be done, but simply failed to "finalize" things.

The majority mainly relies on *Wilkerson v. Klem*, 412 F.3d 449 (3d Cir.2005), to support its assertion that Jones forfeited his right to counsel. In *Wilkerson*, the defendant informed a state court that he wanted his current counsel to "step down"; the court allowed it, but advised the defendant to get a new lawyer and set a trial date for 30 days later. *Id.* at 450–51. The defendant appeared on the trial date without counsel, saying his family was trying to obtain representation, but the trial court concluded that the defendant had forfeited his right to counsel and proceeded. *Id.* at

451. After a federal district court denied a habeas petition, the Third Circuit's review was limited to whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." *Id.* at 452. Because there were no Supreme Court decisions involving forfeiture or "providing any clear guidance as to the standard to be applied before [it can be concluded that] a defendant's misconduct warrants a forfeiture[,] [i]t necessarily follows that the state court's decision here was not an unreasonable application of Supreme Court precedent." *Id.* at 454–55 (first alteration in original) (internal quotation marks and citation omitted).

I believe the majority overstates *Wilkerson's* precedential value for the type of misconduct that can constitute forfeiture. *Wilkerson* expressly noted that it was deciding "whether the state court's application of forfeiture to Wilkerson's case was precluded by Supreme Court precedent." *Id.* at 456. The court's only conclusion was that Supreme Court decisions "provide state courts with a 'basis to conclude' that certain obstructive conduct by a defendant may constitute a forfeiture of Sixth Amendment protections." *Id.* A conclusion of forfeiture, based on the facts of this extremely deferential review by the Third Circuit, has little support.

I would conclude that Jones did not waive or forfeit his right to counsel and therefore his right to be represented by counsel was violated. I would reverse the court of appeals and order a new trial.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.