*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1947**

State of Minnesota,
Respondent,

vs.

Jeffrey Michael Holeman,
Appellant.

**Filed October 27, 2025**
**Affirmed**
**Larkin, Judge**

Dakota County District Court
File No. 19HA-CR-21-1347

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Todd P. Zettler, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Andrew C. Wilson, Special Assistant Public Defender, Wilson & Clas, Minneapolis, Minnesota (for appellant)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction and sentence for first-degree criminal sexual conduct, arguing that the evidence at trial was insufficient to sustain the jury's guilty verdict and that his waiver of counsel for sentencing was invalid. We affirm.

# FACTS

Respondent State of Minnesota charged appellant Jeffrey Michael Holeman with one count of first-degree criminal sexual conduct, alleging that he sexually abused a child multiple times when the child was between the ages of seven and eleven. The charge was tried to a jury.

The victim, who was 18 years old at the time of trial, testified that, when she was between the ages of five and eleven or twelve, she lived in an apartment on the third floor of a large apartment building, Stone Grove, with her mother, father, and sibling. Holeman was a friend of the victim's father, and he came over frequently to watch football games. The victim testified that on one occasion, her father told her to let Holeman into the apartment building because the door was locked downstairs. While Holeman and the victim were in the elevator, Holeman threatened the victim, who had previously accidentally broken a car window with a baseball. The victim thought that Holeman's threat was a reference to her breaking the window, and she did not want her parents to find out about that incident. Holeman then forced the victim to give him oral sex.

The victim testified that Holeman made her engage in oral sex in the elevator or on the stairs more than 60 times when she picked him up from the bottom floor of the apartment building. The victim also testified that Holeman fondled her at his home during a barbeque. Finally, the victim testified that Holman licked her vagina in her bedroom during the Super Bowl. The victim ultimately told her father that something "bad" had happened between her and Holeman, and she reported the sexual assaults to her mother. The victim's mother contacted the police, and the victim gave a recorded interview.

The victim's father testified that Holeman came to the family's Stone Grove apartment regularly, though he disagreed with the claim that the victim had let Holeman into the apartment building more than 40 times. He believed the number was closer to "12" times.

The victim's mother testified that the keypads at Stone Grove stopped working and that it became difficult to buzz people into the building. She testified that the victim would let Holeman into the building. She also testified that the victim told her that Holeman "made [her] give him a blow job" and that the victim said she did it because she was afraid of her parents' potential "reaction to [her] breaking a window." The victim told her mother that the abuse happened "a lot." The victim's mother testified that the victim was alone with Holeman at least 100 times.

The jury received a forensic interview of the victim in which the victim explained that she had broken a car window, and around a week later, she "went in the elevator and [Holeman] took out his ding-a-ling." The victim said that Holeman then made her give him oral sex and that she was around seven years old when this happened.

Holeman testified on his own behalf and denied abusing the victim.

The jury found Holeman guilty as charged. The jury also returned special interrogatories, finding that criminal sexual conduct did not occur in the victim's bedroom, that Holeman engaged in fellatio with the victim, and that Holeman did not engage in cunnilingus with the victim.

Prior to sentencing, Holeman petitioned the district court to proceed pro se, and Holeman's attorney moved to withdraw as counsel. The district court discharged Holman's

3

attorney and permitted Holeman to represent himself at sentencing. The district court ultimately sentenced Holeman to serve 172 months in prison.

Holeman appeals.

**DECISION**

**I.**

Holeman contends that the evidence was insufficient to support the jury's guilty verdict.

When considering a sufficiency challenge to a guilty verdict based solely on direct evidence, an appellate court carefully analyzes the record to determine whether the evidence, viewed in the light most favorable to the conviction, was sufficient to permit the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989); *State v. Olson*, 982 N.W.2d 491, 495 (Minn. App. 2022). The appellate court assumes that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). The appellate court defers to the jury's credibility determinations and will not reweigh the evidence on appeal. *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009); *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002). In sum, an appellate court will not disturb a guilty verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the state proved the defendant's guilt. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Holeman was convicted under Minn. Stat. § 609.342, subd. 1(a) (2012), which provides that a person is guilty of criminal sexual conduct in the first degree if the person

4

engages in sexual penetration with a victim under 13 years of age and the person is more than 36 months older than the victim. Sexual penetration is defined to include fellatio. Minn. Stat. § 609.341, subd. 12(1) (2012); *see* Minn. Stat. § 609.342, subd. 1(a) (stating that consent is not a defense).

Here, the victim provided direct evidence that Holeman made her engage in fellatio while they were in the elevator at Stone Grove. "A conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). Although Holeman challenges the victim's credibility, the jury's verdict indicates that it found the victim credible, and did not credit Holeman's testimony. We defer to that credibility determination.

Moreover, although corroboration is not required, corroborating evidence supports the conviction. For example, the victim's mother and father testified that the victim had let Holeman into the Stone Grove apartment building multiple times, so there was an opportunity for the fellatio to have occurred as described by the victim. Additionally, the victim was consistent in her assertions that Holeman made her perform fellatio and that she did so because she was afraid that her parents would find out about the broken window. The victim made the same claim to her mother and during her forensic interview. *See State v. Bauer*, 512 N.W.2d 112, 116 (Minn. App. 1994) (finding substantial evidence of guilt where the child victim "gave four consistent accounts of the abuse in the course of the police report, investigation, and trial"), *aff'd*, 516 N.W.2d 174 (Minn. 1994); *State v. Ross*, 451 N.W.2d 231, 237 (Minn. App. 1990) (finding that evidence was sufficient to sustain a

conviction where the child's testimony was corroborated "by the consistency of [the] descriptions of the acts"), *rev. denied* (Minn. Apr. 13, 1990).

Holeman argues that the testimony of the victim, her mother, and her father "conflicted in a meaningful way," pointing to the inconsistent testimony regarding how many times the sexual abuse occurred. The victim testified that the abuse occurred over 60 times in the elevator and on the stairs, while the victim's father testified that the victim only let Holeman into the building around 12 times. But the jury was free to reject a portion of the victim's testimony and accept the rest. *See State v. Gilleylen*, 993 N.W.2d 266, 275 (Minn. 2023) ("The jury is the sole judge of credibility and is free to accept part and reject part of the testimony of a particular witness." (quotations omitted)). "Inconsistencies or conflicts between one state witness and another do not necessarily constitute false testimony or a basis for reversal." *State v. Johnson*, 568 N.W.2d 426, 436 (Minn. 1997) (quotation omitted).

Applying the deferential standards that govern our review, we conclude that the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the state proved Holeman's guilt. We therefore do not disturb the verdict.

**II.**

Holeman contends that he is entitled to resentencing because his waiver of counsel was invalid. He argues that the waiver was not in writing and that the district court's inquiry into his desire to represent himself did not meet the requirements of Minn. R. Crim. P. 5.02, subd. 1(4).

6

Criminal defendants have a constitutional right to counsel, as well as a right to choose self-representation. *State v. Worthy*, 583 N.W.2d 270, 279 (Minn. 1998); *see* U.S. Const. amends. VI, XIV; Minn. Const. art. I, § 6. A criminal defendant may voluntarily relinquish the right to legal representation through waiver. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009). The waiver of the right to counsel must be "knowing, intelligent, and voluntary." *Id.* If the facts are undisputed, we review de novo whether a waiver of counsel was knowing and intelligent. *State v. Gant*, 996 N.W.2d 1, 7 (Minn. App. 2023) (quotation omitted).

In Minnesota, a "written waiver of the right to counsel is necessary in felony cases unless the defendant refuses to sign such a waiver." *Jones*, 772 N.W.2d at 504. Before accepting a waiver of the right to counsel, a district court must advise the defendant of the following:

> (a) nature of the charges;
> (b) all offenses included within the charges;
> (c) range of allowable punishments;
> (d) there may be defenses;
> (e) mitigating circumstances may exist; and
> (f) all other facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel.

Minn. R. Crim. P. 5.04, subd. 1(4)(a)-(f).

A waiver that is not in writing "may still be constitutionally valid if the circumstances demonstrate that the defendant has knowingly, voluntarily, and intelligently waived his right to counsel." *State v. Haggins*, 798 N.W.2d 86, 90 (Minn. App. 2011). "Whether the waiver of the right to counsel is valid depends on the particular facts and

7

circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* (quotation omitted). "The defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (quotations omitted).

Holeman petitioned to proceed pro se after his jury trial, so his request regarded only his sentencing hearing. The district court held a hearing on Holeman's petition and verified that Holeman knew that he could apply for the services of a public defender, but Holeman chose to represent himself. In his signed and dated petition to proceed pro se, Holeman acknowledged the charge against him, his right to representation by an attorney, the consequences of discharging his attorney, his trial rights, the disadvantages of proceeding pro se, and the minimum sentence that he faced, 144 months.[1] *See* Minn. R. Crim. P. 5 cmt. ("In practice, a Petition to Proceed As Pro Se Counsel may fulfill the dual requirements of providing the defendant with the information necessary to make a voluntary and intelligent waiver of the right to counsel as well as providing a written waiver."). Importantly, Holeman indicated that he had discussed his desire to represent himself with his attorney.

When a defendant has consulted with an attorney prior to waiving counsel, the district court can "reasonably presume that the benefits of legal assistance and the risks of proceeding without it" have been described to the defendant. *Worthy*, 583 N.W.2d at 276 (quotation omitted). The supreme court relied on that principle in *Worthy*, where the

---

[1] In his petition, Holeman incorrectly wrote that the maximum penalty was "144 years."

8

defendants "were provided with competent legal representation for over a month before trial and took full advantage of that representation up until the morning of their scheduled trial date." *Id.*

In this case, the underlying charge was filed with the district court in June 2021, and Holeman's attorney filed his certificate of representation that same month. Holeman's attorney appeared with Holeman at his pretrial hearings in district court, filed a writ of prohibition with this court on his behalf in May 2022, and represented him during voir dire and at his ensuing jury trial in April and May of 2024. In August 2024, Holeman petitioned the district court to proceed pro se, and his attorney moved to withdraw. The district court considered those requests at a hearing in September 2024, and granted counsel's motion to withdraw. Notably, after the district court granted counsel's motion and excused counsel from the hearing, counsel stated that he recognized his firm's continuing duties to Holeman as a former client and stated that counsel would be available to answer any questions that Holeman might have going forward. Holeman thanked his former attorney in response.

Given the duration of counsel's representation and Holeman's written indication that he had discussed his desire to represent himself with his retained attorney, we reasonably presume that counsel discussed with Holeman the benefits of legal representation at the sentencing phase of his case and the risks of proceeding without it. Under the particular facts and circumstances of this case, we are satisfied that Holeman's decision to represent himself at sentencing was constitutionally valid.

**Affirmed.**