STATE of Minnesota, Respondent,

v.

Denon Anthony RHOADS, Appellant.

No. A10–1568.

Supreme Court of Minnesota.

May 23, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, MN, for appellant.

## OPINION

DIETZEN, Justice.

The issue presented is whether appellant Denon Anthony Rhoads knowingly and intelligently renewed his waiver-of-counsel after the State filed an amended charge that doubled the maximum possible punishment. Rhoads was initially charged with a single count of second-degree burglary. At a pretrial hearing, Rhoads asserted his right to self-representation and signed a written waiver-of-counsel.[1] The State later amended the complaint to include a count of first-degree burglary that roughly doubled the maximum possible punishment. On the day of trial, Rhoads renewed his waiver-of-counsel. As part of the renewed waiver-of-counsel, the district court did not conduct an on-the-record inquiry of Rhoads's understanding of the maximum punishment that might be imposed if he were convicted of first-degree burglary. Because the record does not support an inference that when Rhoads renewed his waiver-of-counsel he understood the maximum possible punishment he faced had doubled, we conclude that the renewed waiver-of-counsel was not knowing and intelligent. We therefore reverse Rhoads's first-degree burglary conviction and remand for further proceedings consistent with this opinion.[2]

---

1. On appeal, Rhoads does not contest the efficacy of his initial waiver-of-counsel.

2. The district court's April 2010 guilty verdict on count I (second-degree burglary) is not unaffected by our decision. On remand, if the State elects not to retry Rhoads on count

Rhoads was initially charged with second-degree burglary in violation of Minn. Stat. § 609.582, subd. 2(a)(1) (2010). The complaint alleged that Rhoads entered the victim's apartment without consent, hit the victim on the head, and then threatened to kill him. The complaint also informed Rhoads that he faced a maximum sentence of 10 years or a $20,000 fine, or both.

At Rhoads's first court appearance, a public defender was appointed to represent him. Two weeks later, at an October 26, 2009, pretrial hearing, Rhoads told the district court that he wanted to discharge his public defender and represent himself. In accordance with Minn. R.Crim. P. 5.04, Rhoads completed and signed a written petition to proceed as pro se counsel, and the court engaged in an extensive colloquy with Rhoads regarding the contents of the petition and his desire to represent himself. During the colloquy, Rhoads indicated, among other things, that he understood that he faced felony-level "offenses," the maximum penalty for which was a sentence of 10 years or a $20,000 fine, or both.[3] Based on the waiver-of-counsel, the court granted Rhoads's request for self-representation.

At a December 2009 pretrial hearing, the prosecutor offered to settle the matter, explaining that if Rhoads pleaded guilty to second-degree burglary, the State would recommend a sentence at the low end of the presumptive sentencing range. The prosecutor notified Rhoads that if he rejected the settlement offer, the State intended to amend the complaint to include a charge of first-degree burglary.

At a pretrial hearing a month later, the prosecutor informed the district court that on December 29, 2009, the State had filed an amended complaint adding a second count that alleged first-degree burglary, Minn.Stat. § 609.582, subd. 1(c) (2010). The fact that the maximum sentence for first-degree burglary was 20 years or a $35,000 fine, or both, was never discussed on the record. The district court did not arraign Rhoads on the new charge, nor did Rhoads formally acknowledge receipt of the amended complaint. In addition to asserting his desire for an immediate resolution of his case, Rhoads stated, "If he's giving me a first degree, he sent it on the 31st. All right? He's motioning the court," and "I don't know what he's thinking . . . . because I already know the case is going to be dismissed, ma'am. It cannot not be." Without confirming that Rhoads had received and understood the amended complaint, the district court denied the request for immediate resolution of his case and ordered Rhoads to appear for trial on April 8, 2010.

On the day of trial, Rhoads signed a written waiver of his right to a jury trial. After accepting the jury trial waiver, the court confirmed that on October 26, 2009, Rhoads discharged his lawyer and signed a petition to proceed as pro se counsel. The court also held the following colloquy with Rhoads:

Q: [T]his says that you understand your right to be represented by a lawyer.

A: Yes.

II (first-degree burglary), the district court shall adjudicate and sentence Rhoads based on the second-degree burglary guilty verdict. *See State v. Vance*, 734 N.W.2d 650, 662–63 (Minn.2007) (remanding "to the district court for adjudication and sentencing on the terroristic threat conviction or, if the state so chooses, a new trial on the third-degree assault

charge." (footnote omitted)), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303, 311 (Minn.2012).

3. During the colloquy, the court misstated the charge as second-degree *murder*, but identified the correct maximum penalty for the charge of second-degree *burglary*.

Q: You understand what it means to work with a lawyer, to have a lawyer represent you, [to] consult [with a lawyer] and you waived and gave up that right and you wanted to proceed as *pro se* counsel?

A: Yes, ma'am.

Q: And does that still continue today?

A: Yes, ma'am.

Q: All right. But you're agreeing to work with [appointed counsel] as your advisory counsel?

A: Yes, I am, ma'am.

The district court, however, did not conduct an on-the-record inquiry regarding Rhoads's understanding of the punishment that might be imposed if he were convicted of first-degree burglary.

At trial, the State presented evidence consistent with the facts alleged in the complaint. The court found Rhoads guilty of first- and second-degree burglary, and entered judgments of conviction on both charges and imposed sentence on the first-degree burglary conviction.[4]

Rhoads appealed to the court of appeals, arguing that (1) the evidence was not sufficient to support conviction on first-degree burglary, (2) he did not knowingly and intelligently waive his right to counsel as to the first-degree burglary charge, (3) his right to a speedy trial had been violated, and (4) he was improperly adjudicated guilty of both first- and second-degree burglary. The court of appeals affirmed the conviction for first-degree burglary and vacated the conviction for second-degree burglary. The court concluded that the evidence was sufficient to support a guilty verdict on first-degree burglary, Rhoads's right to a speedy trial was not violated, and his waiver-of-counsel was knowing and intelligent. Rhoads subsequently petitioned for review of the speedy trial and waiver-of-counsel issues, and we granted review on the waiver-of-counsel issue.

I.

Rhoads does not contest the validity of the waiver-of-counsel he executed on October 26, 2009. Instead, Rhoads contends that the amended complaint constituted a "significant change of circumstances" that required a renewed waiver of his right to counsel and that his renewed waiver on the day of trial was unknowing and unintelligent because he did not understand that the maximum possible punishment had doubled.[5] The State counters that Rhoads's initial waiver-of-counsel remained valid throughout the entirety of the proceedings, and that the district court had no obligation to obtain a renewed waiver.

Whether a waiver of a constitutional right was knowing, intelligent, and voluntary depends on the facts and circumstances of the case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *State v. Worthy*, 583 N.W.2d 270, 275–76

---

4. The district court imposed a 92–month sentence, which fell within the presumptive sentencing range for a defendant with a criminal history score of 6. *See* Minn. Sent. Guidelines IV. When the district court later learned that Rhoads actually had a criminal history score of 5, the district court resentenced Rhoads to an 84–month sentence, which is within the presumptive sentencing range.

5. Rhoads also contends that his April 2010 renewed waiver-of-counsel was unknowing and unintelligent based on changes in his mental health that allegedly occurred after his initial waiver-of-counsel. Because we are reversing Rhoads's first-degree burglary conviction on other grounds, we need not and do not address the claims relating to Rhoads's mental health.

(Minn.1998). The clearly erroneous standard controls our review of a district court's finding that a defendant has knowingly, intelligently, and voluntarily waived his right to counsel. *State v. Jones,* 772 N.W.2d 496, 504 (Minn.2009); *Worthy,* 583 N.W.2d at 276. A finding is clearly erroneous when there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred. *State v. Evans,* 756 N.W.2d 854, 870 (Minn.2008). When the facts are undisputed, however, the question of whether a waiver-of-counsel was knowing and intelligent is a constitutional one that is reviewed de novo. *See State v. Richards,* 456 N.W.2d 260, 264 (Minn.1990).

Before addressing Rhoads's claim that his renewed waiver-of-counsel on the day of trial was unknowing and unintelligent, we must address three questions of first impression. We will address each question in turn.

### A.

Initially, we must determine whether, as a general rule, a defendant who has knowingly, intelligently, and voluntarily waived his right to counsel must renew the waiver-of-counsel at each subsequent hearing. Although this issue is one of first impression in Minnesota, the renewed waiver-of-counsel issue has been addressed by courts in other jurisdictions. Our analysis is informed by a discussion of a defendant's Sixth Amendment rights to counsel and to self-representation, the controlling waiver-of-counsel case law, and the reasoning adopted by other courts that have considered the renewed waiver-of-counsel issue.

■ The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Because the right to counsel is basic to our adversary system of criminal justice, it is part of the due process of law that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In *Faretta v. California,* the United States Supreme Court held that the right to self-representation is implied in the Sixth Amendment because the amendment requires that "the accused, not counsel, ... be 'informed of the nature and cause of the accusation.'" 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting U.S. Const. amend. VI). The Court in *Faretta* emphasized that "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 819–20, 95 S.Ct. 2525.

■ When a defendant asserts the implied right of self-representation, the defendant relinquishes many of the traditional benefits of the right to counsel, and therefore any decision to forgo those benefits must be made knowingly and intelligently. *Id.* at 835, 95 S.Ct. 2525. In *Faretta,* the Court concluded that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (citation omitted) (internal quotation marks omitted). We have similarly cautioned that to ensure a knowing, intelligent, and voluntary waiver-of-counsel, district courts " 'should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments,

mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver.' " [6] *Worthy*, 583 N.W.2d at 276 (quoting *State v. Camacho*, 561 N.W.2d 160, 173 (Minn.1997)). A district court's failure to conduct an on-the-record inquiry regarding waiver, however, does not require reversal when the particular facts and circumstances of the case demonstrate a valid waiver.[7] *Id.* (citing *State v. Brodie*, 532 N.W.2d 557, 557 (Minn.1995)).

Keeping in mind a defendant's Sixth Amendment rights and the controlling waiver-of-counsel case law, we consider the reasoning adopted by other courts that have considered the issue of whether a defendant who has knowingly, intelligently, and voluntarily waived his right to counsel must renew his waiver-of-counsel at each subsequent hearing.

More than fifty years ago, the Eighth Circuit rejected an argument that a defendant must renew his waiver-of-counsel at each subsequent hearing. *Davis v. United States*, 226 F.2d 834, 840 (8th Cir.1955). In *Davis*, the Eighth Circuit explained there was "no reason why the court at each subsequent proceeding[ ] should go through the mere ceremony of again inquiring if the defendant knew his rights and was then again willing to waive them." *Id.* Concluding that "it would be neither good law nor good sense" to require a defendant to renew a valid waiver-of-counsel when nothing has changed since the initial waiver, the Eighth Circuit held that as a general rule a defendant who has knowingly, intelligently, and voluntarily waived his right to counsel need not renew his waiver-of-counsel at each subsequent hearing. *Id.* Nearly every other court that has considered the issue has adopted the same general rule.[8]

**6.** This comprehensive examination is presently incorporated into Minn. R.Crim. P. 5.04, subd. 1(4).

**7.** Citing *State v. Jones*, 772 N.W.2d 496, 504 (Minn.2009), Rhoads contends that in the absence of an on-the-record inquiry regarding waiver, courts may no longer find that a defendant's waiver-of-counsel was knowing and intelligent based on the particular facts and circumstances of the case. In *Jones*, the district court failed to conduct an on-the-record colloquy with the defendant regarding the nature of the charges or the advantages and disadvantages of a decision to waive counsel. 772 N.W.2d at 504. Asserting that we concluded the waiver-of-counsel in *Jones* was unknowing and unintelligent based solely on the lack of an on-the-record colloquy, Rhoads argues that the absence of such a colloquy is now determinative on the issue of whether a defendant validly waived his right to counsel. We disagree. Our analysis in *Jones* was not based solely on the lack of an on-the-record colloquy. Instead, we considered the other circumstances of the case, emphasizing that, "[m]ore importantly, Jones objected twice to proceeding without counsel." *Id.* at 504–05. Moreover, if we had intended to overrule or significantly alter the well-established *Worthy*

test in *Jones*, we would have done so expressly.

**8.** *See United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir.2010) (stating that, "no federal appellate court has held that renewed *Faretta* warnings are required at each subsequent court proceeding"); *see also United States v. McBride*, 362 F.3d 360, 367 (6th Cir.2004) (holding that as a general rule a valid waiver-of-counsel remains in effect at subsequent proceedings); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir.1989) (same); *Schell v. United States*, 423 F.2d 101, 102–03 (7th Cir. 1970) (same); *Becker v. Martel*, 789 F.Supp.2d 1235, 1243–44 (S.D.Cal.2011) (same), *rev'd on other grounds*, ――― Fed.Appx. ―――, ――― (9th Cir.2012) (concluding that district court improperly granted habeas relief because United States Supreme Court "has not squarely addressed whether a substantial change in circumstances requires re-advisal of the right to counsel"); *State v. Carpenter*, 390 So.2d 1296, 1299 (La.1980) (same); *State v. Modica*, 136 Wash.App. 434, 149 P.3d 446, 452 (2006) (same), *aff'd on other grounds*, 164 Wash.2d 83, 186 P.3d 1062 (2008). *But see Traylor v. State*, 596 So.2d 957, 968 (Fla.1992) (explaining that the waiver of the right to

■ Like the court in *Davis*, we can see no reason to require a defendant to renew a valid waiver-of-counsel when nothing has changed since the initial waiver. We therefore hold that as a general rule, a defendant who has knowingly, intelligently, and voluntarily waived his right to counsel need not renew his waiver-of-counsel at subsequent proceedings.

### B.

Second, we consider whether an exception should be made to the general rule discussed in Section I.A when the State doubles the maximum possible punishment by filing an amended charge at a subsequent hearing. Because the issue is one of first impression in Minnesota, our analysis is informed by reviewing some of the exceptions to the general rule recognized by courts in other jurisdictions.

Courts in other jurisdictions have widely recognized an exception to the general rule discussed in Section I.A when an intervening event substantially changes the circumstances existing at the time of the initial waiver-of-counsel. *See, e.g., United States v. McBride*, 362 F.3d 360, 367 (6th Cir.2004) (explaining that federal circuits have held a valid waiver-of-counsel remains in effect at subsequent proceedings in the absence of a substantial change in circumstances). There is, however, some disagreement as to what constitutes a "substantial change" in circumstances.

In *Davis*, the Eighth Circuit suggested that the subsequent filing of a new charge might constitute an intervening event that substantially changes the circumstances existing at the time of a defendant's initial waiver-of-counsel. 226 F.2d at 840. The other potential "substantial changes" identified in *Davis* were "an unreasonable

lapse of time, newly discovered evidence which might require or justify advice of counsel, . . . a request from the defendant, or similar circumstances." *Id.* Because there had been no intervening events between the defendant's guilty plea and the sentencing hearing held 4 days later, the court in *Davis* held that there was no need for the defendant to renew his valid waiver-of-counsel at the sentencing hearing. *Id.*

When squarely faced with the issue of whether a subsequent charge constitutes a substantial change in circumstances, courts have reached seemingly different conclusions. In *Becker v. Martel*, the Southern District of California concluded the subsequent filing of an amended complaint that increased the maximum possible punishment by 8 years constituted a substantial change in circumstances. 789 F.Supp.2d 1235, 1246–47 (S.D.Cal.2011), *rev'd on other grounds,* —— Fed.Appx. —— (9th Cir. 2012). Yet, in *State v. Modica*, the Washington Court of Appeals held that the subsequent filing of a witness-tampering charge did not substantially change the circumstances existing at the time of the defendant's initial waiver-of-counsel, which included a discussion of the maximum possible punishments for an initial charge of second-degree assault. 136 Wash.App. 434, 149 P.3d 446, 452 (2006), *aff'd on other grounds,* 164 Wash.2d 83, 186 P.3d 1062 (2008). The court in *Modica* noted that if every added charge against a pro se defendant required a renewed waiver-of-counsel, "the State might be hindered in its ability to bring additional charges against pro se defendants, and defendants might be encouraged to proceed pro se in order to

counsel "applies only to the present stage and must be renewed at each subsequent crucial

stage where the defendant is unrepresented").

avoid exposure to additional charges." *Id.* at 453 n. 7.

Although the outcomes in *Becker* and *Modica* appear to be inconsistent, the opinions can be reconciled. Unlike *Becker*, the court in *Modica* did not expressly discuss whether the added witness-tampering charge increased the maximum possible punishments for the initial charges, including second-degree assault. A review of the Washington Criminal Code indicates that a second-degree assault offense is punishable by up to 10 years imprisonment, Wash. Rev.Code Ann. §§ 9A.20.021(1)(b), 9A.36.021 (West 2009), while a witness tampering offense is only punishable by up to 5 years imprisonment, Wash. Rev.Code Ann. §§ 9A.20.021(1)(c), 9A.72.120 (West 2009). Thus, the conclusion in *Becker* that the amended complaint that increased the maximum possible punishment by 8 years constituted a substantial change in circumstances is not inconsistent with the conclusion in *Modica* that the addition of a charge that had a lesser maximum penalty did not constitute a substantial change in circumstances.

Keeping in mind the analysis of the courts in *Davis, Becker,* and *Modica,* we now consider the narrow issue before us: whether an exception should be made to the general rule discussed in Section I.A when the State doubles the maximum possible punishment by filing an amended charge at a subsequent hearing. For the reasons outlined below, we conclude that such an exception should be made to the general rule.

■ To establish a knowing and intelligent waiver-of-counsel, the record must demonstrate among other things that the defendant's waiver is " 'made with eyes open.' " *State v. Camacho,* 561 N.W.2d 160, 173 (Minn.1997) (quoting *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). A defen-

dant's waiver is made with eyes open when he comprehends several matters, including "the possible punishments." *Id.*

■ As the court of appeals recognized in this case, an understanding of the range of possible punishments highlights the sobering consequences of a criminal conviction and the prudence of self-representation. Because an amended charge that *doubles* the maximum possible punishment substantially alters the consequences of a criminal conviction, we conclude that it warrants an exception to the general rule that a defendant need not renew a valid waiver-of-counsel at subsequent proceedings. For the same reasons, we conclude that an exception to the general rule is unwarranted when the amended charge does not increase the possible range of punishment. Our holding is limited to the facts of this case and does not reflect an adoption of other exceptions to the general rule that have been recognized by courts in other jurisdictions.

Here, the State filed an amended charge that doubled the maximum possible punishment after Rhoads initially waived his right to counsel, and therefore Rhoads was required to renew his waiver-of-counsel. Because Rhoads affirmatively renewed his waiver-of-counsel in April 2010, we are not faced with a situation in which the district court failed to elicit a renewed waiver-of-counsel. Instead, the issue presented is whether Rhoads's April 2010 renewed waiver-of-counsel was knowing and intelligent.

## C.

■ Third, we must consider the appropriate analysis to be applied to such a determination. In the context of a defendant's initial waiver-of-counsel, we have applied the analysis articulated in *State v. Worthy,* 583 N.W.2d 270, 275–76 (Minn.

1998). For the reasons discussed below, we conclude that the *Worthy* analysis applies with equal force when a court determines whether a defendant has validly renewed his waiver-of-counsel with an understanding of the increase in maximum possible punishment.

In *Worthy*, we explained that "[w]hether a waiver of a constitutional right is valid depends 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). To ensure a knowing and intelligent waiver-of-counsel, we said "trial courts 'should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver.'" *Id.* at 276 (quoting *State v. Camacho*, 561 N.W.2d 160, 173 (Minn.1997)). A district court's failure to conduct an on-the-record inquiry regarding waiver, however, does not require reversal when the particular facts and circumstances of the case demonstrate a valid waiver. *Id.* (citing *State v. Brodie*, 532 N.W.2d 557, 557 (Minn.1995)).

■ We conclude that the analysis articulated in *Worthy* applies with equal force to initial and renewed waivers of counsel. Thus, when the State files an amended charge that doubles the maximum possible punishment, a district court should conduct a comprehensive examination of the defendant's understanding of the increase in the maximum possible punishment. A district court's failure to conduct such an examination, however, does not require reversal when the particular facts and circumstances of the case demonstrate that the defendant renewed his waiver-of-counsel with an understanding of the increase in the maximum possible punishment.

### D.

■ Finally, we examine whether Rhoads's renewed waiver of his right to counsel on the day of trial was knowing and intelligent. In doing so, we apply the *Worthy* analysis to the particular facts and circumstances of the case. *Worthy*, 583 N.W.2d at 275–76; *see also Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019.

We conclude that there is no evidence that Rhoads understood the increased maximum possible punishment when he renewed his waiver of his right to counsel on the day of trial. Although Rhoads made a passing reference to the amended complaint at the January 2010 pretrial hearing, there is no evidence of an understanding that the maximum possible punishment had doubled. Unlike *Worthy*, Rhoads did not have the benefit of counsel when the amended complaint was filed. Moreover, the district court did not arraign Rhoads on the amended complaint. Because the particular facts and circumstances of Rhoads's case do not support a conclusion that Rhoads understood the increased maximum possible punishment when he renewed his waiver-of-counsel, we conclude that the renewed waiver was not knowing and intelligent. We therefore reverse Rhoads's first-degree burglary conviction and remand for further proceedings consistent with this opinion.

### II.

In summary, when a defendant knowingly, intelligently, and voluntarily waives his right to counsel, there is generally no need for a renewed waiver-of-counsel in subsequent proceedings. But when the State doubles the maximum possible punishment by filing an amended charge at a subse-

quent hearing, that general rule does not apply and the defendant must renew his waiver-of-counsel. When considering the validity of a renewed waiver-of-counsel following an amended charge that doubles the maximum possible punishment, a court should use the analysis articulated in *Worthy*, 583 N.W.2d at 275–76, to determine whether the defendant understood the increase in possible punishment. Because the particular facts and circumstances of appellant's case do not support a conclusion that Rhoads understood the increased possible punishment, his renewed waiver-of-counsel was not knowing and intelligent. Based on the above conclusions, we reverse Rhoads's first-degree burglary conviction and remand for further proceedings consistent with this opinion.

Reversed and remanded.

STRAS, Justice (dissenting).

I respectfully dissent. I agree with the court that an initial waiver-of-counsel generally waives a defendant's constitutional right to counsel throughout the proceedings, up to and including sentencing. However, in concluding that Rhoads's constitutional rights were violated by the lack of a second, knowing and intelligent waiver-of-counsel in this case, the court relies on decisions from other jurisdictions requiring a renewed waiver when a "substantial change in circumstances" has occurred. *See, e.g., United States v. McBride*, 362 F.3d 360, 367 (6th Cir.2004); *Becker v. Martel*, 789 F.Supp.2d 1235, 1243 (S.D.Cal.2011), *rev'd on other grounds*, —— Fed.Appx. —— (9th Cir.2012). Rather than adopting a new standard, I would apply our rule that "a defendant will only be permitted to relinquish self-representation if the request is timely, reasonable, and reflects *extraordinary* circumstances." *State v. Clark*, 722 N.W.2d 460, 469 (Minn. 2006) (emphasis added).

Applying that standard, I would conclude that amending a complaint to charge a different degree of the same crime does not constitute an extraordinary circumstance requiring a second, renewed waiver-of-counsel. Prior to trial, amendments by the State to charge additional offenses are generally permitted. *See State v. Pettee*, 538 N.W.2d 126, 131–32 (Minn.1995) (citing Minn. R.Crim. P. 3.04, subd. 2); *State v. Bluhm*, 460 N.W.2d 22, 24 (Minn. 1990); *State v. Doeden*, 309 Minn. 544, 546, 245 N.W.2d 233, 234 (1976). Indeed, Minn. R.Crim. P. 3.04, subd. 2, explicitly authorizes the State to amend its complaint to include new or additional charges. Thus, because Rhoads was expected to defend himself in compliance with all procedural rules and neither party disputes the validity of Rhoads's initial waiver-of-counsel, Rhoads's constitutional rights were not violated by the district court's failure to obtain a second waiver-of-counsel from him.

Accordingly, I would hold that the State's amendment of the complaint charging a different degree of the same crime does not constitute an "extraordinary circumstance[ ]" requiring a second waiver-of-counsel by Rhoads. I would therefore affirm Rhoads's conviction for first-degree burglary.

PAGE, Justice (dissenting).

I join in the dissent of Justice Stras.