*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2021**

Nicolas Wilcox Hult, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 7, 2014
Affirmed
Schellhas, Judge**

Washington County District Court
File No. 82-CV-13-2709

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Adam Kujawa, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license, arguing that he did not freely and voluntarily consent to the breath test. We affirm.

## FACTS

Shortly after midnight on April 24, 2013, Deputy Ty Jacobson of the Washington County Sheriff's Office stopped a vehicle after he noticed that its driver-side headlight was not functioning. While identifying the driver to be appellant Nicolas Hult, Deputy Jacobson observed that Hult had red and watery eyes, slurred speech, and breath that smelled of alcohol. Upon Deputy Jacobson's inquiry, Hult informed the officer that he had consumed "two sips of whiskey." Hult performed poorly on three field sobriety tests, evidencing alcohol impairment, and a preliminary breath test (PBT) revealed an alcohol concentration of .248.

Deputy Jacobson arrested Hult for driving while impaired (DWI), transported him to the Washington County jail, and read the implied-consent advisory to him. Hult indicated that he understood the implied-consent advisory, did not wish to consult with an attorney, and would submit to a breath test. Deputy Jacobson did not obtain a search warrant before conducting a test of Hult's breath. The breath-test result revealed an alcohol concentration above .08, and respondent Minnesota Commissioner of Public Safety therefore revoked Hult's driver's license.

Hult petitioned the district court for reinstatement. At his implied-consent hearing, Hult argued for suppression of the breath-test results on the basis that the test was conducted in violation of his Fourth Amendment rights. Deputy Jacobson testified as the sole witness. The court found that Hult was not coerced into consenting to the breath test and sustained Hult's driver's license revocation.

This appeal follows.

2

**D E C I S I O N**

Hult argues that the district court erred by admitting his breath-test results because the officer violated his Fourth Amendment rights by administering the breath test without a search warrant, consent, or the existence of exigent circumstances, and that the test was not a valid search incident to arrest.

The United States and Minnesota Constitutions guarantee "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1413 (1989). Searches conducted without a warrant are generally unreasonable, unless an exception to the warrant requirement applies. *See State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007) ("[T]he search is unreasonable unless the state proves that the search fell within one of the exceptions to the warrant requirement."). Consent is one such exception. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973); *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

The district court considered the totality of the circumstances and found that Hult consented to the breath test. "For a search to fall under the consent exception, the State must show by a preponderance of the evidence that consent was given freely and voluntarily." *Diede*, 795 N.W.2d at 846. In determining whether consent was voluntary, we examine "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Harris*, 590 N.W.2d 90, 102 (Minn. 1999) (quotation omitted). "[C]onsent can be voluntary even

3

if the circumstances of the encounter are uncomfortable for the person being questioned." *State v. Brooks*, 838 N.W.2d 563, 569 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Because the question of whether consent was voluntary is a question of fact, we review the district court's finding of voluntary consent for clear error. *Diede*, 795 N.W.2d at 846. "A finding is clearly erroneous when there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012).

Hult argues that the commissioner failed to show that his consent to the breath test was not coerced because he agreed to submit to a breath test only after Deputy Jacobson informed him that refusing to take the test is a crime. But "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Brooks*, 838 N.W.2d at 570. Hult attempts to distinguish his case from *Brooks* by pointing out that he did not consult with counsel before agreeing to take the breath test, had never been arrested previously for DWI, and was compliant with Deputy Jacobson. In *Brooks*, the supreme court stated that "the *ability* to consult with counsel," not the consultation itself, is the circumstance that supports a finding of voluntary consent. *Id.* at 572 (emphasis added). As to Hult's lack of prior arrests for DWI, the record is void, and we therefore do not consider it on review. *See Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) ("It is well settled that an appellate court may not base its decision on matters outside the record on appeal . . . ."). And, notwithstanding Hult's compliance with Deputy Jacobson, nothing in the record indicates that Hult "was coerced in the sense that his will had been overborne and his

4

capacity for self-determination critically impaired." *Brooks*, 838 N.W.2d at 571 (quotation omitted).

We conclude that, under the totality of the circumstances, Hult freely and voluntarily consented to the breath test. We therefore do not address Hult's arguments regarding the warrantless search, and we affirm the district court's order sustaining the revocation of his driver's license.

**Affirmed.**