*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0515**

State of Minnesota,
Respondent,

vs.

Michael Anthony Davis,
Appellant.

**Filed February 6, 2017
Affirmed in part, reversed in part, and remanded
Bratvold, Judge**

Hennepin County District Court
File No. 27-CR-15-26617

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Luke J. Blahnik, Shakopee, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

# UNPUBLISHED OPINION

**BRATVOLD**, Judge

On appeal from his convictions of felony domestic assault and simple robbery, appellant argues that (1) the district court erred by not renewing appellant's waiver of counsel after it allowed, on the first day of trial, the state's amended charge of simple

robbery, which increased appellant's potential punishment, (2) the evidence is insufficient to support his convictions; and (3) the district court erred in admitting as evidence the victim's statement to the police. Because the district court erred in not renewing appellant's waiver of counsel after the state amended its complaint, we reverse in part and remand. Additionally, we conclude that the evidence is sufficient to support appellant's conviction for felony domestic assault and the district court did not err in admitting the victim's statement, therefore, we affirm in part.

## FACTS

The evidence admitted at trial established that, from July 2015 and continuing through the date of the trial, appellant Michael Anthony Davis and A.H. were involved in a romantic relationship. On the evening of July 11, 2015, A.H. went out drinking with her roommate. When A.H. and her roommate returned to their townhome in the early hours of July 12, they were intoxicated and found Davis parked nearby. The three went inside the townhome and Davis and A.H. began arguing. Davis was upset with A.H. because he suspected that she was cheating on him. Davis took A.H.'s phone, left the townhome, and walked toward his car, holding A.H.'s phone. A.H. followed Davis.

After Davis was seated in his car, A.H. reached inside the car to grab her phone. A.H. fell to the ground, Davis exited the car, and they scuffled, with both of them rolling on the ground near Davis's car, fighting over A.H.'s phone. At some point, A.H. gave up and told Davis to keep the phone. Davis drove away, with A.H.'s phone still in his possession.

A.H. returned home and her roommate called 911. An officer of the Maple Grove Police Department responded and took photographs of A.H.'s injuries, which she said were caused by the scuffle with Davis. The photographs show that A.H. had a bloody nose, scratches on her face, an abrasion on the inside of her lips, and a bite mark on her shoulder. The officer then took a statement from A.H., in which she stated that Davis pushed her; hit her in the temple, toward her lips, and near her eyes; and bit her arm. After the interview, the officer tried to help A.H. find her phone. When they could not find her phone, the officer asked the roommate to dial A.H.'s number and Davis answered.

On July 17, 2015, a detective interviewed Davis via telephone. During the interview, Davis admitted that during the early hours on July 12, he was involved in an argument with A.H. because "he had some ideas that maybe she was cheating on him." He also admitted that he was involved in a physical altercation with A.H., during which he elbowed her in the face. Davis denied punching or biting A.H.

On September 18, 2015, the state charged Davis with felony domestic assault under Minn. Stat. § 609.2242, subd. 4 (2014). On October 8, 2015, the state amended the complaint to include Davis's two prior qualifying domestic-violence-related convictions that had occurred within the previous ten years.

Davis's first appearance was scheduled and then continued to provide Davis with more time to seek counsel. At the October 12, 2015 hearing, Davis told the district court that he did not qualify for a public defender and could not afford to hire a private attorney. The court provided Davis with contact information for the Legal Rights Center, and scheduled an omnibus hearing.

3

At the omnibus hearing, Davis informed the district court that he had failed to obtain legal counsel. After some discussion, the court scheduled a trial and Davis stated that he would prefer a court trial, not a jury trial. The state informed the court and Davis that a copy of the state's discovery was available for Davis to pick up after the hearing.

On January 8, 2016, Davis appeared for his scheduled court trial. During the morning pretrial proceedings, the district court gave Davis a petition to proceed pro se and waive his right to be represented by an attorney. The court had a lengthy discussion with Davis about his request to represent himself. The court asked Davis about a number of things, including whether he understood the complaint against him. Specifically, the court asked Davis, "[a]nd as the complaint stands right now, there is a sole count charging Domestic Assault Felony. You understand that charge?" Davis answered yes.

The district court then reviewed Davis's written petition line by line. The court informed Davis that it would provide him with more time to prepare for his case if necessary, and Davis said he understood. The court asked Davis whether he understood that he was currently facing imprisonment for five years and/or a fine of $10,000 as the maximum statutory penalty for felony domestic assault. Davis said that he understood. Davis then affirmed his decision to waive his right to counsel and signed the petition to proceed pro se. The district court approved Davis's petition.

Next, the district court asked Davis whether he had received discovery from the state and Davis said no. The state responded that Davis had not picked up discovery after the omnibus hearing. The state explained that it later e-mailed the discovery to Davis, including a transcript of A.H.'s statement, four days before the trial, at the same time it

e-mailed its motion to use relationship evidence and notice of out-of-court statements. Davis told the court that he had not checked his e-mail.

The district court then considered the state's motion to amend its complaint to add a count of simple robbery, under Minn. Stat. § 609.24 (2014). The state admitted that the motion to amend was not e-mailed to Davis along with the discovery. The state then orally moved for the amendment, stating that the factual basis for the charge was that Davis took A.H.'s phone. During its argument, the state noted that the maximum punishment for simple robbery is imprisonment for ten years and/or a fine of $20,000.

The district court explained to Davis some potential responses to the state's motion to amend: not opposing the motion; opposing the motion on the basis that his substantial rights are being prejudiced; or moving for continuance. Before Davis responded, the state argued that adding a new charge of simple robbery would not prejudice Davis's substantial rights, because the addition "does not change the commitment level of the offense from say, a presumptive-stayed sentence to a presumptive commit."

The district court told Davis that it would grant him a continuance if that was his preference. Davis answered that he opposed the amendment, but did not want a continuance; he wanted to "go forward today." After a brief recess, the court permitted the state to amend the complaint.

The district court also reviewed with Davis the waiver of his right to a jury trial, clarifying that the written waiver encompasses both counts against him, including the simple robbery charge. Davis signed the waiver, which the district court approved. The

5

court did not readdress Davis's waiver of counsel, or discuss his maximum possible punishment for the simple robbery charge.

At trial, the district court received the following into evidence: photographs of A.H. showing her injuries at the time of the incident; a transcript and audio recording of A.H.'s statement to the responding officer; a transcript and audio recording of the roommate's 911 call; certified copies of records related to Davis's conviction for misdemeanor violation of an order for protection from 2005; and certified copies of records related to Davis's conviction for a gross misdemeanor domestic assault from 2007. The court also heard testimony from A.H., the roommate, the Maple Grove officer and detective, and three victims of prior incidents involving Davis. Davis testified on his own behalf.

On January 14, 2016, the district court issued written findings of fact, conclusions of law, and verdict, finding Davis guilty of felony domestic assault and simple robbery. On March 11, 2016, the district court entered convictions on both charges and imposed a stayed sentence on the simple robbery conviction with jail time and other conditions. This appeal follows.

**D E C I S I O N**

**I.     Waiver of the right to counsel**

The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants the right to an attorney. *State v. Worthy*, 583 N.W.2d 270, 275 (Minn. 1998). The right to an attorney may be waived if the waiver is voluntary and intelligent. *Id*. Whether a waiver is voluntary and intelligent depends on the facts and circumstances of the case, including the background, experience, and conduct of the accused. *Johnson v.*

6

*Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938). To establish a voluntary and intelligent waiver of counsel, the record must demonstrate that the defendant comprehends several matters, including the possible punishments for the charges. *State v. Rhoads*, 813 N.W.2d 880, 888 (Minn. 2012) (citation omitted). This court reviews a district court's factual finding that a defendant has voluntarily and intelligently waived his right to counsel for clear error. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009). "When the facts are undisputed, however, the question of whether a waiver-of-counsel was knowing and intelligent is a constitutional one that is reviewed de novo." *Rhoads*, 813 N.W.2d at 885.

Davis argues that the district court erred by not renewing his waiver of counsel after the complaint was amended to add a count of simple robbery. Our analysis is guided by *Rhoads*, in which the Minnesota Supreme Court discussed whether a district court must renew a defendant's waiver of counsel at subsequent hearings. *Id.* at 887–90. The supreme court held "as a general rule" that a defendant need not renew his waiver of counsel when "nothing has changed since the initial waiver." *Id.* at 887. But the supreme court also recognized an exception to this general rule in cases where the state "doubles the defendant's maximum possible punishment by filing an amended charge at a subsequent hearing." *Id*. The supreme court reasoned that, "[b]ecause an amended charge that *doubles* the maximum possible punishment substantially alters the consequences of a criminal conviction, we conclude that it warrants an exception to the general rule that a defendant need not renew a valid waiver-of-counsel at subsequent proceedings." *Id.* at 888 (emphasis in original). The supreme court held that, when renewing a defendant's waiver of counsel, the district court "should conduct a comprehensive examination of the defendant's

7

understanding of the increase in the maximum possible punishment." *Id.* at 889. Because the district court in *Rhoads* had not renewed the waiver of counsel after the state amended its complaint to add a charge that doubled the maximum possible punishment for the defendant, the supreme court reversed the conviction of the amended charge.[1] *Id*. at 889-90

This court must determine whether the district court was required to renew Davis's waiver of counsel after the addition of the simple robbery charge. The original complaint charged Davis with felony domestic assault. Due to Davis's two prior qualified domestic-violence-related convictions, his maximum punishment was five years imprisonment and/or a fine of $10,000. *See* Minn. Stat. § 609.2242, subd. 4 (2014). The amended complaint added a count of simple robbery, with a maximum possible punishment of ten years imprisonment and/or a fine of $20,000. *See* Minn. Stat. § 609.24 (2014). Because the amended complaint doubled Davis's maximum possible punishment, *Rhoads* applies here and the district court was required to renew Davis's waiver of counsel after the state was allowed to amend its complaint.

The state argues that *Rhoads* does not apply for two reasons. First, the state contends that this case is distinguishable because the defendant in *Rhoads* was eligible for court-appointed representation, but waived his right to counsel and instead chose to represent himself. 813 N.W.2d at 883. Here, Davis did not qualify for a public defender, and chose to represent himself after failing to obtain private counsel. These factual differences are

---

[1] We note that the supreme court affirmed Rhoads's conviction of the original charge. 813 N.W.2d at 882 n.2.

not material. *Rhoads* emphasized that the accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." 813 N.W.2d at 885 (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541 (1975)). The principle that a criminal defendant should have the information necessary to make decisions "with eyes open" is also true for those who choose to represent themselves instead of hiring private counsel. The state's position is inconsistent with the supreme court's analysis in *Rhoads*.

Second, the state notes that Davis's waiver of counsel and the state's subsequent motion to amend occurred close in time, during the morning pretrial proceeding on January 8, 2016. Because Davis's waiver occurred within minutes of the amendment, the state argues that Davis's waiver was valid. The state correctly notes that the defendant in *Rhoads* made his initial waiver of counsel two months before the state amended its complaint, but we fail to see how this factual difference is relevant. *Rhoads* required the district court to renew the defendant's waiver of counsel, not because too much time had passed between the waiver and the state's introduction of new charges, but to ensure that the defendant had "knowingly and voluntarily" decided to represent himself, with an understanding of the possible punishment he faced. *Rhoads*, 813 N.W.2d at 889–90. Similarly, the district court needed to ascertain whether Davis knowingly and voluntarily decided to represent himself with an understanding of the increased possible punishment under the state's amended complaint.

We conclude that, under these circumstances, *Rhoads* required the district court to renew Davis's waiver of counsel after it allowed the state to amend and add the simple

robbery charge. Davis's written waiver of counsel petition mentions only the felony domestic assault charge. Our review of the record shows that the district court did not discuss waiver of counsel with Davis after the state amended the complaint. Immediately after granting the state's motion to amend, the district court said to Davis, "I know we talked about this, Mr. Davis, that you did have an opportunity to consult with counsel and were unable to afford it." But aside from this passing statement, the district court did not discuss Davis's waiver of counsel. Moreover, while the state mentioned during the hearing that the maximum statutory punishment for simple robbery is ten years' imprisonment, the district court did not ask Davis whether he understood that the amended charge could substantially increase his maximum potential punishment.

Even so, *Rhoads* also held that a district court's failure to renew an on-the-record inquiry about the waiver of counsel does not always require reversal. Specifically, "when the particular facts and circumstances of the case demonstrate that the defendant renewed his waiver-of-counsel with an understanding of the increase in the maximum possible punishment," the conviction may be affirmed. *Rhoads*, 813 N.W.2d at 889. Here, Davis gave no indication that he renewed his waiver of counsel after the charge of simple robbery was added, or that he comprehended that the added charge increased his possible maximum sentence. Because the district court did not expressly address Davis's waiver of counsel regarding the amended complaint, and there is no evidence suggesting that Davis chose to continue representing himself with an understanding of the increase in his maximum possible punishment, we conclude the district court erred and reverse Davis's simple robbery conviction.

## II.    Sufficiency of evidence

When reviewing the sufficiency of the evidence, "we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Holliday*, 745 N.W.2d 556, 562 (Minn. 2008) (quotation omitted). "The verdict will not be overturned if, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the [fact finder] could reasonably have found the defendant guilty of the charged offense." *Id.* (quotation omitted). This court uses "the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). Davis argues that the state did not present sufficient evidence to convict him of felony domestic assault under Minn. Stat. § 609.2242, subd. 4, and simple robbery under Minn. Stat. § 609.24. We will discuss each charge in turn.

### A.    Domestic assault

To convict Davis of felony domestic assault, the state must prove that he (1) committed an act with intent to cause fear in a family or household member of immediate bodily harm or death; or (2) intentionally inflicted or attempted to inflict bodily harm upon a family or household member; and (3) had domestic-violence-related convictions in the past ten years.[2] Minn. Stat. § 609.2242, subds. 1, 4, (2014). Intent is a

---

[2] "Family or household member" includes "persons involved in significant romantic or sexual relationship." Minn. Stat. § 519B.01, subd. 2(b)(7) (2014). "Bodily harm" is "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (2014).

state of mind "generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances." *State v. Moua*, 678 N.W.2d 29, 39 (Minn. 2004).

When a conviction is based on circumstantial evidence, we use a two-step process to assess the sufficiency of the evidence to sustain the conviction. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved. *Id.* Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt," giving no deference to the fact finder's choice among reasonable inferences. *Id.* at 599. To successfully challenge a conviction based upon circumstantial evidence, a defendant must point to evidence in the record that is consistent with a rational theory other than guilt. *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002).

Here, the circumstances proved include that (1) Davis and A.H. were romantically involved at the time of the incident; (2) A.H. and her roommate went out drinking that night; (3) Davis was waiting for A.H. at her residence when she returned; (4) Davis was upset with A.H. and suspected that she was cheating on him; (5) Davis and A.H. argued and later scuffled over A.H.'s phone, with both of them rolling on the ground; (6) A.H. gave up fighting over her phone and returned to her townhouse; (7) Davis drove away with A.H.'s phone; (8) photographs of A.H. taken soon after the incident show injuries, including a mark on her shoulder that a trained police officer identified as human bite mark; and (9) Davis had prior domestic-violence-related offenses.

Davis does not challenge the admission of the photographs or the officer's testimony. He also does not dispute the finding that A.H. suffered a human bite mark. Instead, Davis contends that the circumstances proved do not exclude the rational hypothesis that someone else bit A.H., noting that she had been at two bars prior to the incident, where there were "likely many people who could've placed [the bite mark] there."

While it is true that A.H. went to two bars with her roommate that evening, there is no evidence in the record consistent with Davis's theory that A.H. was bitten by someone else. "We will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). Taking the evidence as a whole, in the light most favorable to the verdict, we conclude that there was sufficient evidence for the district court to reasonably conclude that Davis intentionally inflicted bodily harm on A.H. by biting her. Accordingly, we do not disturb Davis's conviction for felony domestic violence.

### B. Simple robbery

Even though we conclude that Davis's conviction for simple robbery must be reversed based on the district court's failure to renew his waiver of counsel, we must also address Davis's sufficiency argument to determine whether remand is appropriate. *State v. Clark*, 755 N.W.2d 241, 256 (Minn. 2008) (holding that remand is not permitted where the state's evidence in the first trial was legally insufficient, citing the Double Jeopardy Clause).

To convict Davis of simple robbery, the state must prove that Davis took "personal property from the person or in the presence of another and use[d] or threaten[ed] the

imminent use of force against any person to overcome the person's resistance to, or compel acquiescence in, the taking or carrying away." Minn. Stat. § 609.24. Davis contends that his acquisition of A.H.'s phone did not arise from his use of force or threat against A.H., but from A.H.'s decision not to fight over the phone.

The simple robbery statute does not define "force." *State v. Burrell*, 506 N.W.2d 34, 27 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993). Injuries to a victim are evidence of the use of force. *State v. Slaughter*, 691 N.W.2d 70, 76 (Minn. 2005). Also, the statute requires only that the force or threats "precede or accompany *either* the taking *or* the carrying away *and* that the force or threats be used to overcome the victim's resistance *or* compel his acquiescence in the taking *or* carrying away." *State v. Kvale*, 302 N.W.2d 650, 653 (Minn. 1981) (emphasis added).

The district court concluded that Davis used "physical force against the victim to overcome her resistance in his carrying off of her cell phone." This conclusion was supported by findings that on July 12, 2015, Davis took A.H.'s phone and left the townhouse; when A.H. followed Davis outside to retrieve her phone, the two parties scuffled "with both of them rolling around on the ground." A.H. gave up and told Davis to keep the phone, after which Davis drove away in his car with A.H.'s phone.

These findings were supported by A.H.'s testimony that Davis "took [my phone] out of my hand," and "went to his car." She also testified that when she followed Davis to retrieve her phone, "we had an argument and we scruffled [sic] around and ended up kind of rolling around on the ground." When asked to elaborate on "scruffl[ing] around," she testified that, "[w]e were both kind of using force on each other, pushing each [other], I

14

guess, trying to grab the phone, fighting over the phone." She then testified that she "gave up" and "walked away." Evidence also established that A.H. was injured during the scuffle. Additionally, Davis testified that he "walked straight out the door" of A.H.'s residence with her phone, then "scramble[ed]" with A.H. Davis also admitted that he did not have permission to take A.H.'s phone.

We conclude that the evidence, taken as a whole, and in the light most favorable to the verdict, was sufficient to convict Davis of simple robbery because it established that Davis carried away A.H.'s phone and used physical force to overcome her resistance or to compel her acquiescence in his carrying away of her phone. Because the evidence was sufficient to convict Davis of simple robbery in the first trial, we conclude that remand is appropriate following our reversal of the simple robbery charge.

**III. Admission of A.H.'s statement**

"Evidentiary rulings rest within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). On appeal, the party challenging the admission of evidence has the burden of establishing that the district court abused its discretion, and that the party was prejudiced by admission of the evidence. *Id.* Davis argues that the district court erred by admitting A.H.'s statement to law enforcement under the residual-hearsay exception of Minn. R. Evid. 807, and that he was prejudiced by this erroneous admission.

Because Davis did not object to the admission of A.H.'s statement, we review for plain error. Davis must establish (1) error, (2) that the error was plain, and (3) that the error affected his substantial rights. *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). The

15

risk of prejudicial impact from erroneously admitted evidence is lessened in a bench trial "because there is comparatively less risk that the district court judge . . . would use the evidence for an improper purpose or have his sense of reason overcome by emotion." *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009). In particular, we note that the district court expressly stated it did not consider A.H.'s statement in reaching its verdict. Consequently, Davis cannot establish any prejudice.

Even so, we address whether Davis has established error to provide guidance upon remand. Under the residual-hearsay exception, a statement that is not specifically covered by rule 803 or 804, but has equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that:

> (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing, to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name, address and present whereabouts of the declarant.

Minn. R. Evid. 807.

Davis first asserts that he was not given sufficient notice of the state's intent to offer A.H.'s statement before trial and lacked the time to prepare for the evidence, as required under the "interests-of-justice" provision in rule 807(c). But the record shows that the state offered its evidence, which included A.H.'s statement, to Davis following the omnibus

16

hearing on November 13, 2015, almost two months before trial. Davis did not pick up the evidence. The state filed a notice of intent to use out-of-court statements and also informed the district court that it had e-mailed Davis the evidence before trial. During the pretrial, Davis stated that he did not pick up the evidence or check his e-mail. Also, when the district court asked Davis if he wanted a continuance, he declined. Accordingly, Davis's argument that he received inadequate notice is without merit. *See State v. Oliver*, 502 N.W.2d 775, 778 (Minn. 1993) (holding informal notice of evidence satisfies the requirements in rule 807).

Next, to determine whether the district court abused its discretion in admitting A.H.'s statement under the residual-hearsay rule, this court applies "the totality of the circumstances approach" to determine whether the testimony bears "equivalent circumstantial guarantees of trustworthiness." *State v. Robinson*, 718 N.W.2d 400, 409 (Minn. 2006). To this end, we examine whether: (1) there was any confrontation issue; (2) there was any dispute over whether the declarant made the statement or what the statement contained; (3) the reliability of the statement increased because either the statement was against the declarant's penal interest or the declarant was hostile to the state and supportive of the defendant, and (4) the statement was consistent with all the other evidence the state introduced, evidence which points strongly toward the guilt of the accused. *State v. Plantin*, 682 N.W.2d 653, 659 (Minn. App. 2004) (citing *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn. 1985)), *review denied* (Minn. Sept. 29, 2004).

In the present case, no confrontation issue arose because A.H. testified at trial, admitted to making the statement to the officer, and was available for cross-examination.

During her testimony, A.H. admitted that she was intoxicated at the time of the interview, and thus could not recall telling the officer that Davis bit her. Nonetheless, her interview was recorded, so A.H.'s identity as the declarant and the actual contents of her statement were not in dispute. Moreover, the reliability of the statement was enhanced because A.H. was hostile to the state and supportive of Davis; she testified that she wanted to continue a relationship with Davis, and that she did not want him to "get in trouble." Lastly, A.H.'s statement to the officer is consistent with other evidence that pointed to Davis's guilt, such as the photographs taken of A.H. and her injuries; and testimony of the roommate, the officer, and the detective. A.H. testified at trial that she could not remember telling the officer what happened on the night of the incident, but A.H. did not recant.

Accordingly, under rule 807 and the applicable caselaw, A.H.'s statement to the officer bore sufficient circumstantial guarantees of trustworthiness. We therefore conclude that Davis fails to prove plain error and the district court did not abuse its discretion when it admitted A.H.'s statement under the residual-hearsay exception.

Thus, we reverse Davis's conviction for simple robbery and remand for proceedings consistent with this opinion; we affirm Davis's conviction for felony domestic assault and uphold the district court's admission of evidence.

**Affirmed in part, reversed in part, and remanded.**

18