*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1388**

In the Matter of the Welfare of: E. E., Child.

**Filed April 15, 2024**
**Reversed and remanded**
**Larson, Judge**

Washington County District Court
File No. 82-JV-23-209

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kevin Magnuson, Washington County Attorney, Tricia A. Loehr, Assistant County Attorney, Stillwater, Minnesota (for appellant State of Minnesota)

Drake D. Metzger, Metzger Law Firm, LLC, Minneapolis, Minnesota (for respondent E.E.)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant State of Minnesota appeals a district court order denying its motion for presumptive adult certification after charging E.E. with unlawful firearm possession under Minn. Stat. § 624.713, subd. 1(2) (2022), and fleeing a peace officer in a motor vehicle under Minn. Stat. § 609.487, subd. 3 (2022). Because the district court insufficiently evaluated the factors set forth in Minn. Stat. § 260B.125, subd. 4 (2022), we reverse and remand.

## FACTS

The state's probable-cause statement includes the following information. At 2:56 a.m. on May 1, 2023, a police officer in Woodbury observed a driver in a vehicle using a cell phone. The officer initiated a traffic stop. The driver, later identified as E.E, wore a black shirt and ski mask. Another individual in the vehicle also wore a ski mask (the passenger).

E.E. refused to provide his license, gave the officer a false name, and refused to turn off the vehicle. The officer put tire deflation devices underneath the vehicle to prevent E.E. from driving away. When the officer asked E.E. to step out of the vehicle, E.E. put the vehicle in drive, struck the deflation devices, and turned onto a nearby street. The vehicle fishtailed, and the passenger jumped out of the vehicle. The vehicle eventually crashed near a gas station. E.E. fled on foot. After a search helicopter located E.E., officers deployed a K-9 team and took E.E. into custody. Officers discovered that E.E. had a warrant out for his arrest, and they found over $4,500 in fake money when they searched his person. Officers also searched the vehicle and found a "loaded Glock 43X with a red extended magazine" under the driver's seat, a "loaded Glock 17" that was inside a "backpack on the floorboards on the rear passenger side," and a "loaded Glock 19 . . . on the same floorboards, loosely wrapped in a black jacket." The backpack contained paperwork with the passenger's name on it. The passenger later told officers that "she knew [E.E.] had a gun, and knew about one other gun in the car." The passenger said that she owned the backpack but did not know "a gun was inside."

The state filed a delinquency petition charging E.E. with unlawful firearm possession under Minn. Stat. § 624.713, subd. 1(2), and fleeing a peace officer in a motor vehicle under Minn. Stat. § 609.487, subd. 3. The state moved to certify E.E. as an adult under Minn. Stat. § 260B.125 (2022). The district court received evidence supporting the following facts at a hearing regarding the motion.

E.E. was 16 years old at the time he allegedly committed the offenses. The state had filed 22 prior charges against E.E. from 2020 to 2022, primarily involving robbery, car theft, financial-card fraud, and burglary, most of which occurred in between placements at multiple juvenile-detention facilities. In Hennepin County, E.E. had six stayed adult sentences all running concurrently under extended juvenile jurisdiction (EJJ); the longest stayed sentence was 129 months in prison.

In connection with his charges and stayed adult sentences, E.E. had the following placements and programming. From December 2020 to March 2021, E.E. was in Hennepin County Home School Placement. There, E.E. completed assignments to help him manage his anger and develop self-sufficiency. At first, E.E. was reluctant to engage in these activities, but learned he needed to apply himself to complete the program. In May 2021, E.E. entered another juvenile facility, Woodland Hills, but absconded in a stolen vehicle.

E.E. next entered the West Central Regional Juvenile Center (WCRJC), where he stayed from July 2021 to December 2021. While at WCRJC, E.E. participated in group sessions and assignments intended to teach him coping mechanisms, anger management, empathy, and how to develop positive peer relationships. E.E. retained the information but had slow progress. When E.E. admitted his life needed to change, staff doubted his

3

sincerity. Moreover, staff disciplined him multiple times for hitting peers, acting aggressively, and antagonizing personnel. In September 2021, while on furlough with his mother, E.E. jumped out of her car and absconded to Minneapolis. While in Minneapolis, E.E. broke into a home with another person and violently threatened a victim before stealing her cell phone, credit card, and $20. Officers detained E.E. and returned him to WCRJC.

E.E. later entered the Red Wing Minnesota Correctional Facility for juveniles (Red Wing), where he stayed from March 2022 to March 2023. There, he completed programming related to his anger and mistrust of others, and the reasons for his anti-social behavior and its impact on others. E.E. struggled during the first few months but began making progress. He eventually demonstrated a desire for change and assumed leadership positions, which included serving as a role model for other juveniles. Staff created a transition plan for E.E. to reenter the community while still receiving therapy and other resources. The alleged offenses at issue in this appeal occurred just over one month after his release.

The district court also received evidence regarding the length of E.E.'s sentence if E.E. was found guilty of the alleged offenses. Under EJJ, Hennepin County would retain jurisdiction over E.E. until he turned 21, meaning he could remain incarcerated up to 54 months from the date of the hearing. If E.E. received an adult sentence, E.E.'s presumptive sentence under the Minnesota Sentencing Guidelines would be a 60-month prison term; E.E. would spend 40 months in prison and 20 months on supervised release if he had no disciplinary violations.

The district court further received the following information regarding different placement options and programing for E.E. in connection with the alleged offenses. Under EJJ, E.E. could be placed at Red Wing where he would be able to access services ranging from trauma and grief therapy, work experience, academic courses, and training on how to deal with aggression. If E.E. received an adult sentence, he would take part in the Youthful Offender Program, which "creates separation for youth from the general prison population" under the federal Prison Rape Elimination Act (PREA), 34 U.S.C. §§ 30301-30309 (2018).

After the hearing, the district court issued an order denying the state's motion for presumptive adult certification. The district court evaluated the six statutory factors under section 260B.125, subdivision 4, and determined that the seriousness of the offenses, E.E.'s culpability, the adequacy of punishment or programming, and the dispositional options favored EJJ. The district court determined that E.E.'s record of delinquency favored adult certification, and that his programming history was neutral. Evaluating the factors as a whole, the district court determined that E.E. "rebutted the presumption that [the] matter should be certified as an adult proceeding."

This appeal follows.

## DECISION

The state argues the district court abused its discretion when it denied presumptive adult certification because E.E. failed to present clear and convincing evidence that his alleged offenses should remain in juvenile court. *See* Minn. Stat. § 260B.125, subd. 3. We review an order denying presumptive adult certification for an abuse of discretion. *In re Welfare of D.F.B.*, 433 N.W.2d 79, 82 (Minn. 1988). "We review questions of law de

novo," *In re Welfare of R.J.E.*, 642 N.W.2d 708, 710-11 (Minn. 2002), and findings of fact under the clearly erroneous standard. *State v. Buckingham*, 772 N.W.2d 64, 69 (Minn. 2009); *see also* Minn. R. Civ. P. 52.01. A finding is clearly erroneous only if "there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012).

In part I, we analyze whether the district court abused its discretion in its application of section 260B.125, subdivision 4. In part II, we analyze the appropriate remedy.

## I.

We first address whether the district court abused its discretion in its application of section 260B.125, subdivision 4. Section 260B.125, subdivision 3, presumes adult certification if:

> (1) the child was 16 or 17 years old at the time of the offense; and
>
> (2) the delinquency petition alleges that the child committed an offense that would result in a presumptive commitment to prison under the Sentencing Guidelines and applicable statutes, or that the child committed any felony offense while using, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm.
>
> If the court determines that probable cause exists to believe the child committed the alleged offense, the burden is on the child to rebut this presumption by demonstrating by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety. If the court finds that the child has not rebutted the presumption by clear and convincing evidence, the court shall certify the proceeding.

6

To determine whether a child demonstrated "by clear and convincing evidence that retaining the proceeding in the juvenile court [would serve] public safety," a district court must consider six factors:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim [(factor 1)];
>
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines [(factor 2)];
>
> (3) the child's prior record of delinquency [(factor 3)];
>
> (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming [(factor 4)];
>
> (5) the adequacy of the punishment or programming available in the juvenile justice system [(factor 5)]; and
>
> (6) the dispositional options available for the child [(factor 6)].
>
> In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision.

*Id.*, subd. 4. With these standards in mind, we review the district court's determination that this case should remain under EJJ.

## A.    Factor 1 – Seriousness of the Alleged Offense

We first evaluate whether the district court abused its discretion when it found factor 1 favored EJJ. Under factor 1, the district court must evaluate "the seriousness of

7

the alleged offense in terms of community protection." *Id.*, subd. 4(1). When evaluating this factor, a district court may consider details like "the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim." *Id.*

The district court determined that the seriousness of the alleged offenses favored EJJ. The district court observed that E.E.'s firearm offense did not involve a victim, distinguishing it from other offenses E.E. committed in the past. The district court also found that, given E.E.'s history, he "cannot be allowed in the community without significant behavior modification." Thus, the district court determined that it needed to evaluate "which mechanism (EJJ or certification) [would] provide the most likely behavior modification." The district court then concluded that the length of time E.E. "could be incarcerated and supervised in the community [was] about the same as the amount of time that he would be under court jurisdiction as an EJJ offender." Based upon this information, the district court determined the seriousness of the alleged offenses favored EJJ.

The state argues the district court abused its discretion when it found factor 1 favored EJJ. The state first argues that, for the unlawful-firearm-possession charge, E.E. faces a presumptive prison sentence of at least five years and this necessarily means the offense favors adult certification under factor 1. *See* Minn. Stat. § 609.11, subd. 5(b) (2022). We disagree.

Under the statute, crimes that include a presumptive prison commitment automatically trigger presumptive certification if the child was 16 or 17 years old at the time of the offense. *See* Minn. Stat.§ 260B.125, subd. 3. Therefore, factor 1 would have

8

no meaning if a presumptive prison commitment automatically means the crime favors adult certification. And such an interpretation would undermine the legislature's directive that the district court consider "the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim." Minn. Stat. § 260B.125, subd. 4(1). Thus, we decline to adopt the state's argument that the presumptive prison sentence alone makes the seriousness of E.E.'s unlawful-firearm-possession charge favor adult certification.

The state next argues the district court abused its discretion in its factor 1 analysis because it considered improper factors. We agree. Under the statute, the district court must review the offenses actually committed and the circumstances surrounding those offenses. *See* Minn. Stat.§ 260B.125, subd. 4(1). Here, rather than focus on the seriousness of the alleged offenses, the district court focused on facts relevant to other factors. In particular, the district court: (1) compared the current crime to respondent's prior crimes, facts relevant to factor 3; (2) analyzed the adequacy of programming, facts relevant to factor 5; and (3) considered the different dispositional impacts between EJJ and adult certification, facts relevant to factor 6.

Because the district court legally erred when it focused on improper factors and clearly erred when it failed to make findings related to the offenses E.E. allegedly committed, the district court abused its discretion when it analyzed factor 1.

**B.** **Factor 2 – Culpability**

We next evaluate whether the district court abused its discretion when it found factor 2 favored EJJ. Under factor 2, a district court must consider, "the culpability of the

child in committing the alleged offense." Minn. Stat. § 260B.125, subd. 4(2). The Minnesota Supreme Court recently held that when evaluating culpability, a district court may only evaluate the considerations set forth in the statute: (1) "the child's participation in planning and carrying out the offense" and (2) "the existence of any of the mitigating factors set forth in the sentencing guidelines." *In re Welfare of H.B.*, 986 N.W.2d 158, 170-71 (Minn. 2022).

The parties agree that the district court misapplied factor 2. Here, for the fleeing charge, the district court found that E.E. drove the vehicle and made the decision to flee. For the unlawful-firearm-possession charge, the district court found that a passenger attributed one of the firearms to E.E. As a result, the district court concluded that "no circumstances mitigate[d] [E.E.'s] culpability in these charges." Despite these findings, the district court found factor 2 favored EJJ because detention in a juvenile facility would provide better rehabilitation, and in turn, a better outcome for public safety than detention in an adult facility.

Contrary to *H.B.*, the district court failed to confine its analysis to the considerations set forth in the statute. Therefore, the district court erred in the manner that it analyzed factor 2.[1]

---

[1] E.E. argues that the sentencing guidelines mitigate his culpability for his unlawful-firearm-possession charge. Because, as set forth in part II, we remand for the district court to reevaluate the section 260B.125, subdivision 4 factors, we do not reach this issue and will allow the district court in the first instance to decide whether E.E.'s culpability for the two alleged offenses favors EJJ.

**C.    Factor 3 – Prior Record**

We next evaluate whether the district court abused its discretion when it found factor 3 favored adult certification.  Under factor 3, a district court must weigh "the child's prior record of delinquency."  Minn. Stat. § 260B.125, subd. 4(3).  Here, the district court determined that E.E.'s delinquency history favored adult certification, acknowledging his extensive criminal record.

The state argues that, in conducting its analysis, the district court improperly diminished the importance of E.E.'s delinquency record when it weighed factor 3.  But the district court agreed with the state that E.E.'s prior record favors adult certification.  Thus, we do not discern that the district court abused its discretion when it evaluated this factor.  We note, however, that the district court must "give greater weight to . . . the child's prior record of delinquency" when evaluating the section 260B.125, subdivision 4, factors.

**D.    Factor 4 – Programming History**

We next evaluate whether the district court abused its discretion when it found factor 4 did not favor either EJJ or adult certification.  Under factor 4, a district court must consider, the "child's programming history, including the child's past willingness to participate meaningfully in available programming."  Minn. Stat. § 260B.125, subd. 4(4). "[P]rogramming" is "a specialized system of services, opportunities, or projects designed to meet a relevant behavioral or social need of the child." *In re Welfare of J.H.*, 844 N.W.2d 28, 38 (Minn. 2014).  School generally does not fall into "the broad definition of programming in subdivision 4(4) because its purpose is to provide children with basic

education, not to address specific behavioral or social issues of a child relevant to juvenile delinquency." *Id.* at 39.

The district court found that E.E.'s programming needs frequently went unmet prior to entering the juvenile system and that ongoing programming combined with progress in brain development might lead to better outcomes for E.E. The district court also highlighted that E.E. had some success at Red Wing, but the district court acknowledged the possibility that additional programming might not turn E.E. into "a productive member of the community."

The state argues the district court failed to follow *H.B.* when it analyzed this factor because it ignored that E.E. had been in four residential placements, largely failed to comply with the programming at those placements, and continued to engage in criminal conduct upon release. We agree with the state that the district court did not consider all the relevant facts when evaluating factor 4.

Under *H.B.*, the district court's factor 4 analysis must focus on whether E.E. willingly participated in past programming. *See* 986 N.W.2d at 174-75 ("[T]he fourth factor plainly analyzes a juvenile's programming history and whether the juvenile demonstrated a willingness to participate, such that EJJ programming would serve public safety interests."). A district court abuses it discretion when it considers whether a child "would benefit from programming" or "why a juvenile may have failed in programming." *Id.* at 175.

Here, the district court improperly focused on factors beyond E.E.'s past willingness to participate in programming. Instead, contrary to *H.B.*, the district court considered both

12

the reasons E.E. may have been unsuccessful in programming in the past (his brain development and the state's failure to provide early intervention) and the benefits he may receive from programming (skills development and ongoing maturation). *See id.* (concluding a district court cannot examine whether a child would benefit from programming or why the child may have failed in programming when evaluating factor 4). Further, to the extent it discussed his past programming history, it focused solely on E.E.'s most recent conduct at Red Wing and ignored the full scope of his programming history. Under factor 4, the district court can only consider E.E.'s past programming history and, in doing so, it must review the full scope of that history.

Because the district court legally erred when it focused on improper factors and clearly erred when it failed to make findings related to the full scope of E.E.'s past programming history, the district court abused its discretion in its factor 4 evaluation.

### E.    Factor 5 – Punishment and Programming

We next consider whether the district court abused its discretion when it determined factor 5 slightly favored EJJ. Under factor 5, the district court must consider "the adequacy of the punishment or programming available in the juvenile justice system." Minn. Stat. § 260B.125, subd. 4(5).

The district court found that, if it granted adult certification, E.E.'s sentence for unlawful firearm possession would result in 40 months in prison if E.E. was released after 2/3 of an adult sentence, resulting in him "being back in the community at age 19." In contrast, if the district court denied adult certification, a placement at Red Wing could extend to his 21st birthday – incarceration for approximately 54 months if calculated from

13

the date of the hearing. The district court also speculated that, in the adult system, E.E. might form relationships with adult prisoners that would promote criminality.

The state argues the district court erred in determining that the available punishment and programming favored EJJ. The state observes that the most likely placement under EJJ would be Red Wing and that E.E. already underwent treatment at Red Wing and did not change his behavior. We are not persuaded.

The record shows that, if adult certification occurs, E.E. would likely face 40 months in prison and 20 months on supervised release under the sentencing guidelines. However, under EJJ, the state could confine E.E. up to 14 months longer at Red Wing—until his 21st birthday. Moreover, the record supports the district court's finding that the adult system would not provide the same juvenile-tailored programming E.E. could receive at Red Wing. The district court applied the correct standard when it evaluated factor 5, and its findings are supported by the record. Therefore, the district court did not abuse its discretion in its factor 5 analysis.

### F.    Factor 6 – Dispositional Options

Last, we consider whether the district court abused its discretion when it found factor 6 favored EJJ. Under factor 6, a district court must consider, "the dispositional options available for the child." Minn. Stat. § 260B.125, subd. 4(6).

In evaluating factor 6, the district court first relied on the same findings regarding the length of incarceration between EJJ and adult certification. The district court then explained that, regardless of its decision, Hennepin County may still decide to execute E.E.'s stayed sentence for 129 months in prison because he violated the terms of his

14

probation. The district court also noted that a dispositional benefit to EJJ was that Hennepin County—E.E.'s home county—would decide the ultimate disposition of this matter. The district court stated that this was a positive dispositional option because most of E.E.'s prior offenses occurred in Hennepin County and that it does not serve public safety to remove E.E. from the county that knows him best.

The state argues that the district court abused its discretion in analyzing this factor because E.E.'s status in Hennepin County is not relevant to whether EJJ serves public safety. Moreover, the state argues that E.E. already received programming at Red Wing, he did not change his behavior in response to that programming, and, therefore, reinstating him in a juvenile facility would not reduce his threat to public safety.

The state conflates the relevant inquiry between factor 4 and factor 6 with respect to E.E.'s programming history. Factor 6 is forward looking, directing the district court to review the different dispositional opinions available to the child and whether public safety is better served by one or the other. Here, the district court properly considered the dispositional options for this child, including the length of incarceration and programming. The district court also considered whether one disposition would better serve public safety because one county had more experience with this child. Given the particular facts in this case, we do not discern that it was improper for the district court to consider the child's relationship to Hennepin County when evaluating the dispositional options.

Because the district court applied the correct standard when it evaluated factor 6 and its findings are supported by the record, we conclude the district court did not abuse its discretion in its factor 6 analysis.

## II.

As set forth above, we conclude the district court improperly evaluated three of the section 260B.125, subdivision 4, factors when it denied the state's motion for adult certification. Thus, we must determine the proper remedy.

In certain cases, we have reversed and ordered that the district court certify a child to stand trial as an adult. *See, e.g.*, *In re Welfare of P.C.T.*, 823 N.W.2d 676, 686-87 (Minn. App. 2012), *rev. denied* (Minn. Feb. 19, 2013). But in other cases, we have reversed and remanded for the district court to redetermine whether the juvenile rebutted presumptive adult certification. *See, e.g.*, *In re Welfare of L.M.*, 719 N.W.2d 708, 714 (Minn. App. 2006); *In re Welfare of B.A.D.*, No. A06-1776, 2007 WL 584371, at *5 (Minn. App. Feb. 27, 2007).[2] When we do so, it is often because the district court's analysis strayed from the applicable law and additional findings are needed to meaningfully review the factors.

We conclude that this matter falls into the latter line of cases. First, the legislature requires the court to "give greater weight to the seriousness of the alleged offense," i.e., factor 1. Minn. Stat.§ 260B.125, subd. 4. Here, we have inadequate findings on that factor because the district court failed to evaluate the correct criteria. Second, the factors are a tool that "must be applied but are not a rigid, mathematical equation." *In re Welfare of*

---

[2] We cite this nonprecedential opinion for its persuasive value only. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

*D.M.D.*, 607 N.W.2d 432, 438 (Minn. 2000). And, in this case, we have an inadequate analysis on half of the factors and a factual record where we cannot clearly determine the appropriateness of adult certification. Thus, given the district court's "considerable discretion in determining whether a juvenile should be certified for adult prosecution," *In re Welfare of U.S.*, 612 N.W.2d 192, 194 (Minn. App. 2000) (quotation omitted), a remand is appropriate to allow the district court to make findings consistent with the correct legal standards in the first instance.

For these reasons, we reverse the district court and remand for further proceedings consistent with this opinion. The district court may reopen the record to conduct a further evidentiary hearing, but it is not required to do so.

**Reversed and remanded.**